No. 2073.—LEVY & DIETER, in Liquidation, *v.* DU BOIS, LOWE & FOLEY.

Parol evidence that has been offered by the creditor and received by the judge *a quo* without objection, to prove that a third person has promised to pay his debt, will be disregarded by the Supreme Court in examining the case on appeal.

APPEAL from the Sixth District Court, parish of Orleans. *Cooley, J. Roselius & Phillips*, for plaintiffs and appellees. *R. & H. Marr*, for defendants and appellants.

WYLY, J. The plaintiffs allege that the defendants, joint owners of the steamship Minnetonka (a vessel engaged in carrying personal property for hire), and commercial partners so far as the transactions of said steamship are concerned, are jointly and severally indebted to them $20,808 52, the amount of advances made to said vessel by Alpheus Hardy & Co., of Boston, at the instance and for the benefit of the defendants, which said sum the plaintiffs were compelled to pay as sureties

of the defendants, who neglected to pay said debt. They prayed judgment against each of the defendants *in solido* for said amount, with legal interest thereon from the twentieth December, 1867, and costs.

The defendant Foley answered separately, pleading a general denial.

He pleads, also, that the Merchants' Towboat Company of New Orleans, a corporation established in accordance with the laws of the State of Louisiana, was the owner, in its aggregate and corporate capacity, of one undivided third of the steamship Minnetonka, of which the other two-thirds were owned by Lowe and Du Bois.

That the stock of the Merchants' Towboat Company was divided into sixty shares, of $500 each, of which respondents' firm, Thomas & Foley, owned originally twenty-two shares; and plaintiffs, Levy & Dieter, owned fifteen shares; the other shares being owned by other parties, all living in New Orleans, whose names and the number of shares held by them respectively are set out in detail.

That after the date of the act of incorporation, Thomas & Foley sold seven of the twenty-two shares originally owned by them, and thenceforth said firm owned fifteen shares, the same number as held and owned by Levy & Dieter; and this was the condition and ownership of the stock at the date at which the Company became the owner of the one-third of the Minnetonka.

That when it became necessary to register the vessel at the Customhouse at New Orleans, respondent, whose firm of Thomas & Foley were managers of the Merchants' Towboat Company, desired to have the registry made in the names of Lowe and Du Bois and the Merchants' Towboat Company; but for convenience, and after the matter had been canvassed and was well understood at the Customhouse, the registry was made in the names of Lowe and DuBois and respondent, respondent representing and acting for the company, all of which was well known to and understood by the stockholders and by Levy & Dieter specially.

That Levy & Dieter have sold the Minnetonka and received the price, and have also collected and received all the earnings of the vessel, for no part of which have they accounted to the Merchants' Towboat Company. That respondent has no knowledge whatever of the account upon which the present action is brought, nor of the state of accounts between Levy & Dieter and the owners of the Minnetonka. But he alleges that Levy & Dieter can in no event claim of him individually, nor is he liable in any manner whatever to Levy & Dieter *in solido*, for any claim or demand which they may have or pretend to have against the steamship Minnetonka or her owners.

The court gave judgment against the defendants *in solido* for the amount claimed, and the defendant Foley has appealed.

Our attention is directed to two bills of exceptions taken by the defendant, Foley, to the ruling of the court in rejecting a certified copy of the notarial act of incorporation of the Merchants' Towboat Company, and certain parol testimony offered by him to prove that one-third of the steamship Minnetonka belonged to the Merchants' Towboat Company; that Levy & Dieter were stockholders, holding as many shares of stock of said company as Thomas & Foley; that Thomas & Foley were managers of said company; that the registry of the Minnetonka at the Customhouse, in the name of Foley for one-third of said vessel, was for the Merchants' Towboat Company, and it was so registered for convenience by him as manager; and that the liability of the defendant Foley toward plaintiffs was only such as results legally from the fact that the firm of Thomas & Foley were stockholders and managers of said Merchants' Towboat Company.

The court refused this evidence for the reason that the plaintiffs sue as subrogees of Alpheus Hardy & Co., claiming all their rights; that as to Alpheus Hardy & Co., the defendant, Foley, having registered the vessel in his own name, could not deny the fact. He held himself out to the world as one-third owner, and Alpheus Hardy & Co. acted upon the information contained in the registry. That testimony diminishing the liability of the defendant Foley, which would not be admissible against Alpheus Hardy & Co., can not be admissible against the plaintiffs asserting the rights of Alpheus Hardy & Co., to which they claim to be subrogated by operation of law.

We think the court did not err in rejecting the evidence.

In advancing to the vessel, Alpheus Hardy & Co. gave credit to the owners; they had the right to presume that Foley was the owner of one-third, because he appeared as such in the registry at the Customhouse; besides, they held his power of attorney authorizing them to sell his undivided third of said vessel.

If the allegation of the plaintiffs be true, that they were the sureties of the defendants and were compelled to pay the debt due by the latter to Alpheus Hardy & Co., they ought to receive the amount owing by the defendants, and which they were compelled to pay.

From the evidence, we are satisfied that defendants were liable *in solido* on the twentieth of December, 1867, to Alpheus Hardy & Co. for $20,656 85, for advances to the steamer Minnetonka, a common carrier; and that the defendant, Foley, having held himself out to them as part owner, was liable as owner.

A fair interpretation of the evidence of Alpheus Hardy, Joshua W. Davis and A. D. Dieter, which was received without objection, leaves no doubt that the plaintiffs were bound to Alpheus Hardy & Co. as the sureties of the defendants. Having advanced a large amount, for which they held a bottomry bond on said vessel, signed by the defend-

ant, Foley, as part owner, they consigned it to Alpheus Hardy & Co., and we are satisfied they guaranteed the payment of such advances as Alpheus Hardy & Co. might make in behalf of the owners.

There is no doubt that the owners were advised of the advances made by Alpheus Hardy & Co., and that they assented thereto.

As to the objection that, under the act of 1858, parol evidence shall not be received to prove any promise to pay the debt of a third person, we will remark that if this statute were applicable to this case, the parol evidence was received without objection, and we will give it effect.

We are satisfied that the plaintiffs, paying the debt due Alpheus Hardy & Co., as sureties of the defendants, became thereby subrogated to the rights of the former against the latter, and that they are entitled to judgment for $20,656 85, with five per cent per annum interest thereon from the twentieth of December, 1867.

This amount is proved to have been paid. The plea of usury was not set up in the answer, although it is urged in the brief.

The other defenses, set up only in the brief of the appellant, we will not notice.

It is therefore ordered that the judgment herein as to the defendant Z. Foley be reduced to $20,656 85, and as thus amended that it be affirmed.

It is further ordered that the plaintiffs pay costs of this appeal.

---

### On Rehearing.

Howe, J. In the case of Merz v. Labuzan, 23 An. 747, we had occasion to decide that the law of 1858, which declares that parol evidence shall not be received to prove any promise to pay the debt of a third person (R. S. 1870, s. 1443) must prohibit the court from giving any effect to such evidence, even if received without objection.

The plaintiffs in this case alleged that Alpheus Hardy & Co. made advances and furnished supplies to the vessel of defendants, but were unwilling to do so, except upon the previous agreement of plaintiffs to be securities for the reimbursement of the same; that they became such securities, and as such were obliged to pay the debt, and having paid it, they claim to have been legally subrogated and to have a right to recover it from defendants.

There is no written evidence in the record to prove this promise by the plaintiffs, and therefore nothing to support the allegation that they were bound to pay the debt, and being bound, were by the fact of payment legally subrogated. And see also Graves v. Scott, 23 An. 690.

We think that justice requires the cause to be remanded; and we

26

will take occasion to say that we do not think the appellant, Foley, can be held in any event for premiums of insurance not specially authorized to be paid for his account.

It is ordered that the judgment heretofore rendered by us be set aside. It is now ordered that the judgment of the lower court be reversed and the cause remanded for a new trial, appellees to pay costs of appeal.