### No. 8837.
### Orleans Appeal.

## DR. DAVID HYMAN, Appellant, v. V. VITRANO.

(March 30, 1925, Opinion and Decree.)
(April 27, 1925, Rehearing Refused.)
(May 26, 1925, Decree Supreme Court, Writ of Certiorari and Review Refused.)

*(Syllabus by the Court.)*

1. **Louisiana Digest—Physicians—Par. 9.**
Where the father of a married woman engages a physician to treat his daughter, he is liable for the value of the physician's services notwithstanding the legal responsibility of the daughter's husband.

Appeal from the Civil District Court, Parish of Orleans, Hon. Percy Saint, Judge.

This is a suit by a doctor for professional services.

Judgment for defendant. Plaintiff appealed.

Judgment reversed.

Woodville & Woodville, attorneys for plaintiff and appellant.

Geo. Montgomery, attorney for defendant and appellee.

WESTERFIELD, J. This is a suit by a doctor for a fee for professional services rendered defendant's married daughter. The defense consists of a denial of legal responsibility upon the ground that the husband of the daughter is alone responsible for medical services rendered to her in the absence of a special agreement on the part of the father or other person to pay the same.

There was judgment below in defendant's favor dismissing plaintiff's demand and plaintiff has appealed.

Did Vitrano, the father, employ Dr. Hyman to treat Mrs. Semprivivo, the daughter, is the question presented.

Dr. Hyman testifies that on or about August 21, 1920, he received a telephone call urging him to come at once to 5901 Iberville Street; that the message was given by Mrs. Nelson, wife of Dr. Nelson, who was out of the city and whose practice he (Dr. Hyman) had in charge during his (Dr. Nelson's) absence; that he went immediately as requested and upon arrival found himself in the home of defendant, and defendant's daughter, Mrs. Semprivivo, unconscious with temperature of 105 degrees; that upon examination, Mrs. Seprivivo was found to be in extremis and an operation imperative; that he recommended her immediate removal to the French Hospital, which was done, and a minor operation performed the next day, and, some two weeks later, a major operation was performed which was successful, and that after a long and most disagreeable treatment, his patient was well on the way to recovery, when another doctor was called in who performed a simple operation which resulted in Mrs. Seprivivo's complete recovery. Dr. Hyman at first testified that at the time of his first appearance in defendant's home, defendant was present and assumed entire financial responsibility for his professional services without solicitation on his part. This statement he repeated several times, but on cross-examination he was not positive whether Vitrano was present that day or the next, but he was sure that he saw him either at his home the first day or at the hospital the next day and that when he first met him, Vitrano, with every evidence of distress and parental solicitude, urged him to do everything he could to save his daughter's life and to spare no expense and send the bill to him because his son-in-law, the patient's husband, was no account and at that time in the penitentiary and that if he should return he (Vitrano) would eject him violently from his house. Dr. Hyman testifies that Vitrano frequently repeated this statement concerning his employment and particularly upon one occasion when

Vitrano called upon him at his home and at. that time in the hearing of a Mrs. Corbett, a trained nurse living in the house with Dr. Hyman. Mrs. Corbett corroborates the plaintiff in this part of his testimony.

Defendant, testifying, denies ever employing plaintiff or agreeing to pay his bill. He says that he told him to go slow because his daughter only had $200.00, which was to her credit with a local Homestead, and that he exhibited the pass book to the doctor in support of that statement and added that when the $200.00 was gone, there was no more. In other words, give her $200.00 worth of attention. Defendant admits paying plaintiff $25.00 for his assistant and also admits paying all hospital charges, which he says was paid out of the $200.00. An offer was made of checks and bills covering these items by defendant's counsel to be produced and later filed, but they are not in evidence.

Other members of defendant's family testified, including the patient herself and they corroborate defendant as far as they can, but differ as to the presence of Semprivivo, the patient's husband, in the defendant's home and the date of his return from the penitentiary and reconciliation with his wife and her family, for there had been an estrangement.

Semprivivo, the husband, did not testify and Dr. Hyman says he saw him only once, when he called at his office and denied that he was responsible for his wife's desperate condition, as had been asserted by members of her family.

We are convinced that defendant did employ plaintiff and should pay for his services, which, as the record indicates *ad nauseam*, were of the most trying and disgusting character. Every probability supports this view. The desperate character of the daughter's illness and the natural parental solicitude for her recovery at any cost or sacrifice; the irresponsibility of the husband and his failure to testify; the failure to produce the vouchers covering payment of hospital expenses, nurse, etc. We cannot credit the defendant's statement that he told the doctor to go no further in his effort to save his daughter than $200.00 would carry him, because she had no additional funds. The statement was made in argument that such conduct was consistent with the Italian characteristics. We do not think so and do not believe that the natural instincts are more firmly established in other nationalities.

Dr. Hyman sues for $1,000.00. We can only allow him $500.00, whatever may be the actual value of his services. He fixed his fee at $500.00 at the conclusion of his services and sent Vitrano a bill for that amount and, subsequently, and we are inclined to think, largely due to the employment of another doctor to finish his work, increased his bill to $1,000.00.

For the reasons assigned, the judgment appealed from is reversed and it is now ordered that there be judgment for plaintiff, Dr. David Hyman, and against V. Vitrano, defendant, in the full sum of Five Hundred ($500.00) Dollars, with legal interest from judicial demand and costs of both courts.