## LAWRASON v. BANISTER

(May 19, 1930. Opinion and Decree.)
(June 2, 1930. Rehearing Refused.)

George Dewey Smart, of New Orleans, attorney for plaintiff, appellee.

Hopkins & Talbot, of New Orleans, attorneys for defendant, appellant.

HIGGINS, J. Plaintiff, as assignee of a claim for doctors' fees for professional services rendered, brings this suit against defendant for the sum of $200, balance due on account: The petition alleges, in substance, that the defendant, on or about June 6, 1927, engaged Dr. J. T. O'Ferrall, a bone specialist, to treat defendant's brother for a broken leg and agreed to pay the doctor for his services; that the said agreement was made before any treatment was given and before any charges were incurred; that in accordance with the agreement with the defendant, Dr. O'Ferrall rendered medical services to defendant's brother for the period from June 6, 1927, to August 16, 1927, for which Dr. O'Ferrall charged the defendant the sum of $300, as appears from an itemized statement annexed to the petition; that on July 20, 1927, complying partially with the terms of the above-mentioned contract, defendant paid Dr. O'Ferrall the sum of $100 on account, leaving a balance due of $200; that on February 2, 1928, the claim was assigned by Dr. O'Ferrall to plaintiff, as appears from the assignment which is annexed to the petition; and that defendant was duly notified of the assignment and payment was requested, but defendant refused to pay.

Defendant filed an exception of vagueness and no cause of action, which were referred to the merits, and then answered, denying categorically the allegations of the petition. There was a trial of the merits resulting in judgment in favor of plaintiff, as prayed for, and defendant has appealed.

It is not disputed that Dr. O'Ferrall was engaged and rendered the services in question, that the amount charged was reasonable, and that the assignment of the claim was made to the plaintiff by Dr. O'Ferrall.

But the plaintiff contends that the defendant agreed to be primarily or directly liable to pay the debt, while the defendant contends that he at no time promised to pay Dr. O'Ferrall his fees for medical services rendered or to be rendered in behalf of his brother, and that he only agreed to pay the hospital bills, which he paid.

Dr. O'Ferrall, a witness for the plaintiff, on direct examination testified as follows:

"Q. When this matter first arose who first consulted you?
"A. Dr. Banister telephoned my house and asked me if I would meet the train, his brother had received an injury and he wanted me to treat him and asked me if I would meet the train and I met the train the following morning. Dr. Banister was there at the time, we had to wait about 20 minutes for the train and during that time he told me his brother had had a good many financial reverses and he thought he lost everything but nevertheless he would stand behind the matter in regard to the bill for the services rendered his brother, and I thought Dr. Banister was responsible at the time, so I really was very glad to treat his brother and I had heard, however, that Dr. Banister was very hard."

On cross-examination Dr. O'Ferrall testified as follows:

"Q. According to the statement you say that Dr. Banister met you at the train and told you he did not know what financial circumstances his brother was in?
"A. Yes.
"Q. And he told you that he would stand behind the financial matters regarding the expenses?
"A. Yes, which I inferred was his agreement to pay.
"Q. What did you understand by that?
"A. I think anybody would understand if the man stated he would stand behind the debt if he did not pay he would. Suppose I go into a store with a man and I say 'if he does not pay for these goods I will.' Dr. Banister himself knows his intention was to pay it. If he wants to slip from under it that is up to him."

Counsel for the defendant then objected to the introduction of any further evidence on the ground that parol evidence is inadmissible to prove a promise to pay the debt of a third person and renewed the exception of no cause of action. The exception of no cause or right of action, which was referred to the merits, we are informed in the argument at bar, was based upon the ground that a promise to pay the debt of another, to be binding, must be in writing, and that the petition failed to make this necessary allegation, and that parol evidence is inadmissible to prove a promise to pay the debt of a third person.

It appears that the judge, a quo, over the timely objection of counsel for the defendant, permitted other oral evidence to be introduced. The sole testimony as to what was agreed upon consists of that of Dr. O'Ferrall, as hereinabove stated, and Dr. Banister, the defendant. Dr. Banister denied that he promised to pay for the medical services to be rendered to his brother by Dr. O'Ferrall.

The testimony convinces us that defendant, Dr. Banister, did agree to pay Dr. O'Ferrall's fee for services to be rendered to his injured brother, in the event that his brother did not pay it. But as Dr. O'Ferrall's testimony shows that it was his understanding of the agreement that if the defendant's brother did not pay the bill for his medical services to be rendered, the defendant would, the obligation was not a primary or direct one, but a secondary or collateral obligation, and therefore not subject to proof by parol evidence.

Article 2278 of the Revised Civil Code provides, in part, as follows:

"Parol evidence shall not be received: * * * 3. To prove any promise to pay the debt of a third person."

The Supreme Court, in the case of Watson Bros. vs. Jones, 125 La. 249, 51 So. 187, said:

"There can be no objection to one's contracting to pay for goods to be delivered, whether to the obligor, or to a third person, and the obligation resulting from such a contract may be none the less a debt of the obligor because the third person, to whom the goods are delivered, also becomes bound for the price. If the condition of the contract is that the obligor is to pay for the goods only in the event that the person to whom they are to be delivered does not, then the latter is to be regarded as the principal debtor, and the contract is a collateral one, of suretyship, in which the obligor would be regarded as binding himself for the debt of another, and which could not be proved by parol evidence. Graves vs. Scott & Baer, 23 La. Ann. 692; Levy & Dieter vs. Du Bois, Lowe & Foley, 24 La. Ann. 398. * * *

"Of course, if the goods were 'sold' to Pierson, he became a debtor for the price; but two persons may make themselves liable, primarily (and not, necessarily, in the relation of principal and surety) for the same debt, and that is what the petition seems to allege was done by defendant and Pierson. * *. * If it shows that defendant was to pay only in the event that Pierson should not, it would have to be disregarded, notwithstanding its having been received, since it would, in that case, go to prove a promise to pay the debt of another. Merz vs. Labuzan & Carter, 23 La. Ann. 747; Levy & Dieter v. Du Bois, Lowe & Foley, 24 La. Ann. 401; Baker & Thompson vs. Pagaud, 26 La. Ann. 221."

For the reasons assigned, the judgment of the trial court is annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that the plaintiff's suit be dismissed at his cost.