No. 3429

Second Circuit
(Second Division)

———

WILLIAMS v. BREAZEALE-HYAMS
MOTORS, INC.

———

(May 7, 1931. Opinion and Decree.)

———

Jas. W. Jones, Jr., of Natchitoches, attorney for plaintiff, appellee.

Phanor Breazeale, of Natchitoches, attorney for defendant, appellant.

TALIAFERRO, J. Plaintiff alleges that in the months of April and May, 1928, he sold and delivered to defendant lumber and building material at an agreed price, the total amounting to $252.96, and, said indebtedness not having been paid, after amicable demand, this suit was instituted to recover judgment therefor, with legal interest from May 5, 1928.

Defendant admits the purchase of the lumber and material from plaintiff at the price alleged, but avers that plaintiff is indebted unto it to the extent of $7.50 for labor on his car and material sold him, and further avers that on the verbal order of plaintiff they delivered to one Robert Harrison, a colored man, certain truck casings or tires, as shown by copy of bill attached, amounting to $114, for which plaintiff stood responsible, which amounts defendant pleads in compensation and set-off against the admitted indebtedness due plaintiff, leaving a balance of $131.36.

Defendant avers that this balance was offered to plaintiff, but was declined. On the date this suit was filed defendant deposited in the registry of the court, $137.56, which includes interest on the admitted balance, and accrued court costs to that time.

Defendant prays that said deposit be accepted as to the total amount due to plaintiff, and that his demand otherwise be rejected with costs.

Since defendant admits owing plaintiff the amount sued for, and plaintiff admits owing defendant $7.50 for labor on his car, there remains only one issue of fact to be determined; and that is whether under the

evidence plaintiff can be held responsible as a principal for the price of the casings and tubes delivered to Robert Harrison, amounting to $114.

On February 21, 1928, the date these goods were delivered to Harrison, he was engaged in hauling logs to plaintiff's saw-mill. Desiring to equip an extra truck with needed casings, he sent his young son, around fifteen years of age, to plaintiff with the request that he arrange for the casings to be delivered to him. Plaintiff testified that the boy only mentioned one casing and that he phoned to defendant asking if Harrison could get the casing and was answered in the affirmative by Mr. Vern Breazeale, an officer of the company; that this 'phone conversation took place while the boy was present at plaintiff's mill several miles out of the city of Natchitoches. The boy proceeded to defendant's place of business and made known his desire for the casings, adding three tubes. Mr. Breazeale testified that after the boy told him that the casings were wanted by his father, he was called by plaintiff on the 'phone, and that plaintiff stated that he would stand responsible for the price of the casings; that this was before the goods were delivered to Harrison's son. Plaintiff denies emphatically that he obligated himself in any respect to be responsible for the price of these goods.

This Harrison boy when first asked if he heard what plaintiff said to Mr. Breazeale when talking to him on the 'phone, replied: "I don't recollect." He afterwards stated that plaintiff said "Robert Harrison wanted them (the casings) and that he would be responsible for them."

This boy seems to have been responsible for the inclusion of the tubes in the transaction involving the sale of the casings. His father stated that he sent the boy for casings. Mr. Williams, the plaintiff, testified that the boy only mentioned one casing, and Mr. Breazeale testified that plaintiff agreed to be responsible for the price of the casings. The tubes are not mentioned in connection with plaintiff's alleged agreement to stand good for the price of the other goods.

Plaintiff testified that he had only one conversation with defendant about this matter and that was through Mr. Vern Breazeale, while this boy was present, while Mr. Breazeale testified that he only talked on the 'phone with plaintiff once about the casings and that was after the boy had arrived at defendant's place of business.

Mr. Breazeale stated that Richard Harrison's account with his firm had been closed, except for very small amounts, and that he would not have credited him with the price of these goods, but for plaintiff's promise to be responsible therefor. It is shown that plaintiff had on another occasion stood good with defendant for casings purchased by Harrison to the amount of sixty dollars.

Richard Harrison knew nothing personally regarding the conversations between plaintiff and defendant touching the sale and delivery of the casings and tubes as he was many miles away in the woods hauling logs at the time.

The negro boy is the only witness who has any personal knowledge of the exchange of conversation between plaintiff and defendant bearing on the matter, except the litigants themselves, and he con-

tradicted himself on a material point, about which he should have been certain.

The casings and tubes were charged to Harrison and a copy of the invoice sent to plaintiff about March 1st, after the sale.

From the record, we are not able to determine whether the lower court, in deciding the case, held that the evidence did not preponderate in favor of defendant on the issue of fact, or whether judgment turned on the question of law involved, admitting that the facts were with defendant. Defendant's demand against plaintiff on account of the price of casings and tubes was rejected, save for $50, which plaintiff admitted, while testifying, that Richard Harrison had left with him for defendant's account.

We do not believe the evidence on part of defendant establishes that plaintiff bound himself as principal to pay the price of the casings and tubes. To hold him for the payment of that account, we would necessarily have to reach the conclusion that he did so bind himself. If he simply went surety for Harrison in this respect, parol testimony was not competent to prove such agreement.

Mr. Vern Breazeale testified, in one place, that plaintiff stated "he would be responsible for it"; in another place he stated that the goods "were sold on plaintiff's o. k.", while in another place, he says "the goods were charged to Harrison's account, approved by Williams, on the phone."

The most that can be said of this evidence is that it tends to establish the capacity of surety on part of the plaintiff. It does not show a primary obligation against him.

It is possible for two persons to be bound as principals for the same debt, but the intent to bring about such relation should unmistakably appear from the evidence.

In Watson Bros. v. Jones, 125 La. 249, 51 So. 187, the court said:

"The allegations that A. made a contract with B. to the effect that B. should sell, and let C. (a tenant of A.'s) have, goods and supplies, and that A. should pay for them, does not set up a promise to pay the debt of a third person, since two persons may be bound, as principals, for the same debt; and hence parol evidence is admissible, in a suit against A., to prove the contract as alleged.

"If, however, it should appear from the evidence so admitted, that A. was to pay for the goods only in the event that C. did not, the evidence would have to be disregarded, since, in that case, it would establish, as against A., an obligation to pay the debt of another, and parol evidence can neither be admitted nor considered, if admitted, for that purpose."

Graves v. Scott & Baer, 23 La. Ann. 692; Levy & Dieter v. DuBois, Lowe & Foley, 24 La. Ann. 398; B. P. Braud, Inc., v. Beardslee, 1 La. App. 623.

The District judge gave plaintiff judgment for $292.86, less a credit of $50 collected by a plaintiff from Robert Harrison, and less a further credit of $7.50 due on open account. In our opinion, this judgment is correct, and it is hereby affirmed, at appellant's cost.