No. 3176

Second Circuit

MASSEY v. MURRAY

(July 14, 1931. Opinion and Decree.)

C. H. Lyons, of Shreveport, attorney for plaintiff, appellee.

Dickson & Denny, of Shreveport, attorneys for defendant, appellant.

McGREGOR, J. This is a suit by the plaintiff, W. B. Massey, a lawyer practicing law at the Shreveport bar, against the defendant, T. W. Murray, for the value of professional services rendered in the organization of a corporation known as the Alden Oil Company, Incorporated. It is alleged that the services rendered covered a period of time from February 8, 1926, to April 27, 1926, or two months and nineteen days. The defendant is alleged to have been a non-resident and suit was therefore brought by attachment. Coupled with the attachment was a garnishment proceeding wherein the First National Bank of Shreveport was named garnishee. According to the return of the sheriff on the writ of attachment, there was seized one drilling rig, complete, one boiler, and one lot of drill pipe. The answer of garnishee shows that $611.20 belonging to the defendant was in its possession. The petition states that the services rendered were worth the sum of $1,500; that $400 had been paid on the account, so that the amount sued for is the sum of $1,100. On trial in the lower court, there was judgment in favor of the plaintiff against defendant for the sum of $600, and the writ of attachment was sustained. Just how the court arrived at this sum does not appear. The defendant has appealed, but the plain-

tiff has not answered. The plaintiff is suing the defendant personally, instead of the corporation, on the theory that he was personally employed by the defendant in the beginning and that the defendant recognized the obligation as a personal one at different times thereafter. In his answer the defendant denied that he was ever indebted personally to the plaintiff in any sum whatsoever but that the services rendered by the plaintiff were to and for the benefit of the Alden Oil Company, Incorporated. So the first question to be determined is as to whether the defendant is personally liable to plaintiff for any amount, and if so, then it must be determined how much that amount is.

In his petition the plaintiff alleged that he was employed by the defendant "to attend to all legal matters in connection with the organization and operation of the Alden Oil Company, Incorporated." In his testimony on the trial of the case, plaintiff says that on February 8, 1926, defendant and one W. A. Robinson came to his office and stated that they wanted some legal work done in connection with the organization of an oil corporation. The question of the fee for the services to be rendered was raised but not agreed on for the reason that the plaintiff told them that he could not fix it in advance because he did not know how much work would be required. He says he assured them, however, that his charge would be reasonable and in line with the price usually charged for that kind of work and that they both then and there promised him that they would pay whatever the charges should be. He also testified that the defendant on two or three occasions afterwards agreed to pay the amount sued for.

For the purpose of corroborating his testimony on the agreement by the defendant to pay plaintiff's claim personally, he called only one witness—Judge Robert Roberts—who had represented some of the stockholders of the Alden Oil Company, Incorporated, before he was elected judge. Judge Roberts testified that he had represented four or five of the stockholders in a controversy they were having with the rest of the stockholders, among whom was defendant. The matter was finally settled by Judge Roberts' clients selling their stock to the defendant and the rest of the stockholders for $3,000 cash, less whatever the corporation owed to its creditors. Naturally the question immediately arose as to what the debts of the corporation were. On this point Judge Roberts testified:

"Something was said in the conference about some debt to Mr. Massey for legal services and Mr. Pritchard and Mr. Murray (defendant) remarked, 'Well, we will take care of that. You won't be expected to look after that.'"

The contention of the plaintiff in offering Judge Roberts as a witness is that in this trade wherein his clients sold out to defendant and the other stockholders, they agreed that all of the debts of the Alden Oil Company were to be deducted from the price of $3,000 paid them for their stock in the company, and that when defendant and his associates said, "We will take care of that," referring to plaintiff's claim for the balance due on his fee, that meant that the one speaking assumed and promised to pay the debt personally and not as an obligation of the corporation. This testimony might have a tendency to show that the balance due on plaintiff's fee was not an obligation of the corporation, but not necessarily so. It is evident that those stockholders who were selling out their interests in the company for $3,000, less all the debts due by the corporation,

wanted to hold the debts down to as small a figure as possible and when the list of debts was being prepared, it could easily happen that the defendant and those stockholders who were putting up the money and buying the interests that were being sold would eliminate certain debts from the privilege of being paid out of this fund and retain them as company debts, and at the time agree that the company should pay them. When the defendant was sworn as a witness, he stated that that was what happened; that he and Dr. Pritchard, who was associated with him, agreed that the balance due on plaintiff's fee should be paid by the company and not included in the list of debts that should be paid out of and deducted from the $3,000 being paid for the stock being bought. On the cross-examination Judge Roberts did not say whether the defendant and his associates meant that they would take care of the balance due on the plaintiff's fee individually or as a company. There was a written contract covering the agreement reached, but for some unexplained reason it was not introduced in evidence by either side.

At the time of this agreement when the defendant and his associates bought out the other stockholders, the defendant was represented by Mr. Allen Rendall, his attorney. Mr. Rendall testified for the defendant and we gather from his testimony that nothing was said that would indicate whether the defendant and those purchasing with him the stock of the rest of the stockholders intended to personally recognize as an individual obligation the balance due on plaintiff's fee. A careful reading of the testimony of Judge Roberts and Mr. Rendall fails to disclose anything that indicates that defendant promised personally and individually to pay the amount sued on or any other amount. The testimony of these two witnesses may be eliminated for the reason that neither can or will swear what the plaintiff must prove in order to sustain his claim. So that so far as the testimony is concerned we have the plaintiff testifying that the debt is the defendant's and that he recognized it as his and promised orally to pay it on several different occasions, while the defendant is just as positive in saying that he never did at any time recognize the debt as his individual obligation but that he always considered that whatever was due to the plaintiff was a company debt. If there were no more evidence than the testimony of these two—the plaintiff and the defendant—the case would be with the defendant because of the failure of the plaintiff to make out his case by a preponderance of evidence. But there is other evidence in the case that strongly corroborates the defendant in his contention.

In plaintiff's petition he says that, "he was employed by the said T. W. Murray as attorney to attend to all legal matters in connection with the **organization and operation** of the Alden Oil Company, Incorporated." (Boldface type ours.) This allegation itself would indicate that the employment was for the corporation and not an individual employment. Furthermore, there was introduced in evidence an itemized statement of account rendered by the plaintiff which reads as follows:

"W. B. Massey
Attorney at Law
305 Ricou-Brewster Bldg.
Shreveport, Louisiana.
April 24th, 1926.
Alden Oil Company, Inc.,
Shreveport, Louisiana.
to
W. B. Massey, Dr.
To professional services rendered from February 8th, 1926, to date_____$1500.00

Less payments as follows:
    Feb. 20th, 1926, by check____$200.00
    Mch. 7th, 1926, by draft____ 150.00

    Total  ...............................____$ 350.00

Balance due  _____$1150.00"

On the face of this statement it is clear that the plaintiff considered this a company debt and not an individual obligation. Furthermore, the plaintiff testifies that there were three credits amounting to $400 to be deducted from the $1,500 charged for services from the beginning to the date of the bill. The first of these credits is a $200 check dated February 20, 1926, and signed "Alden Oil Company, Incorporated, by W. A. Robinson, President." This was just twelve days after the charter was written by the plaintiff as attorney and passed before him as a notary public, and just two days after it had been filed and recorded in the office of the clerk of the First District Court and ex-officio recorder of Caddo parish. The next credit is a check for $50 dated February 27, 1926, and signed "Alden Oil Company, Incorporated, by W. A. Robinson, President." And the third and last item of credit is a draft for $150 dated March 10, 1926, and signed by W. A. Robinson, individually. Testimony in the case showed this to be company money. On the bottom left-hand corner of this draft appears the notation "On account." So that the only written statement that plaintiff ever rendered covering the services rendered by him was against the company and not against the defendant and the first three payments made on the account were made by the company and no payment was ever made by the defendant or any other individual. One circumstance that argues strongly against the theory that this defendant bound himself personally for the balance of this bill is that when the company was organized it was on the basis of five thousand shares. Defendant signed for one share, another signed for one share and W. A. Robinson, who was made president, signed for four thousand nine hundred ninety-eight shares. Another circumstance favoring the contention of the defendant to the effect that the debt was a company obligation is that the Alden Oil Company, Incorporated, deeded to the plaintiff and his wife certain mineral leases for a consideration of $400 and the defendant claims that this sum was to be applied as a credit on plaintiff's claim against the company.

But it may be contended that that portion of plaintiff's bill that may be for services in connection with writing the charter is in fact a personal debt of those securing the services in the first instance. But it is a matter of common knowledge that while the expenses of the first organization of a corporation similar to this one is usually guaranteed by the parties, it is always intended that these charges shall ultimately be borne by the company. In fact, a debt of this kind is often paid for in stock. But, be that as it may, the company did pay the plaintiff $400 in cash and that was surely sufficient to pay for the services of plaintiff in writing the charter. It is evident that from the date of the writing of the charter the plaintiff was working for the company in its operation as is indicated in plaintiff's petition. The individual stockholders who may have been personally liable for the fee for writing the charter had a right to have the first money paid in by the company credited on that portion of the bill.

For reasons assigned the judgment appealed from is hereby annulled and reversed and the demands of the plaintiff are rejected, the costs of both courts to be paid by the plaintiff.