## LANDRY v. WHITE. *
### No. 14455.

Court of Appeal of Louisiana. Orleans.

March 13, 1933.

Racivitch & Hickerson, of New Orleans, for appellant.

Arthur Landry, in pro. per.

HIGGINS, Judge.

This is a suit by an attorney at law for a fee for professional services rendered the defendant's brother. The petition alleges that on January 6, 1932, the defendant, under a verbal contract of employment, engaged plaintiff, in his capacity as a practicing attorney at law, to represent the defendant's brother, Joseph White, in the criminal district court, where he was charged with shooting a woman with the intent to commit murder; that the trial of the criminal case took place on January 14, 1932, consuming one full day and resulted in a verdict of "Not Guilty"; that no price was fixed for petitioner's services at the time of his employment; that he intended to charge the sum of $300, which would have been a fair and reasonable fee, but, upon the solicitation of mutual friends, he fixed the amount of his fee at $150.

Defendant answered admitting that his brother had been charged with a serious criminal offense and that the plaintiff had represented him as an attorney at law during the trial of the case and that the sum of $150 which plaintiff seeks to recover is a fair and reasonable fee for his services, but denies that he employed the plaintiff, and avers that the plaintiff had been employed by his brother, Joseph White, upon the recommendation of Charles Palermo, another attorney, who was an office associate of the plaintiff.

On the trial of the case on the merits, there was judgment in favor of plaintiff as prayed for, and defendant has appealed.

The only question before the court is whether or not the plaintiff has successfully borne the burden of proving by a preponderance of the evidence that he was employed by the defendant and not by his brother, Joseph White.

The record shows that Clayton White and Joseph White are brothers, aged 30 and 32,

---

*Rehearing granted April 10, 1933.

respectively; that Joseph White was charged in the criminal district court with shooting a woman with intent to commit murder; that, with the assistance of two attorneys, Edward A. Generelly and James J. Connor, he surrendered and was admitted to bail, his brother, Clayton White, reluctantly signing the bond; that thereafter these two attorneys rendered no further services, and an attorney by the name of Maurice Rooney was employed by Joseph White to represent him; that, upon Mr. Rooney's death, Mr. Charles Palermo, an attorney at law, who was related by marriage to Dominick and Jake Ciaccio, brothers, requested Dominick Ciaccio, the father-in-law of the defendant, to prevail upon the defendant to have him use his efforts to get Joseph White to employ Mr. Palermo in the case; that as a result thereof Joseph White employed Mr. Palermo, who, upon investigating the case, came to the conclusion that he was not experienced enough in the trial of criminal cases to competently represent defendant where there was such a serious charge; that Mr. Palermo recommended the plaintiff who shared law offices with him and with whom he was associated in the trial of a number of cases; that the defendant, Clayton White, Dominick and Jake Ciaccio had frequently employed Mr. Palermo and also referred legal business to him, and, on several occasions Mr. Palermo had associated the plaintiff with him in these matters; that on the night of January 6, 1932, Mr. Palermo telephoned Mr. Landry from defendant's drug store and told him to remain at home as he was coming to get him in an automobile in order to discuss the case of Joseph White; that the defendant took the car of his father-in-law, Dominick Ciaccio, and drove Mr. Palermo to plaintiff's home, where he got into the car and then the three parties motored back to the drug store; that the plaintiff was introduced to Joseph White, who related the facts and circumstances in connection with the criminal case; and that plaintiff undertook the trial of Joseph White's case and succeeded in having him acquitted.

Mr. Palermo testified on direct examination that he suggested that Mr. Landry be employed to handle the criminal case, and that the defendant said, "All right, get Mr. Landry." On cross-examination, he testified as follows:

"Q. Mr. Palermo do you practice law with Judge Landry? A. Yes.

"Q. In the same office? A. Yes. * * *

"Q. Did you ever make any agreement with Mr. Clayton White for any fee in connection with the case, the case of shooting with intent to kill? A. No.

"Q. You made no arrangements with Mr. Clayton White to pay you a fee? A. No.

"Q. You made no arrangements for Clayton White to pay Judge Landry a fee? A. No.

"Q. Did Judge Landry ever make any arrangements with Mr. Clayton White to pay him a fee, in your presence? A. No."

Judge Landry, the plaintiff, on direct examination, said: "I had no reason to believe I was being employed other than by Clayton White, he came to me, I knew him, I was informed by Mr. Palermo he suggested my name to Mr. Clayton White and we knew nobody in the transaction but Clayton White and I feel that he is indebted to me for the fee and he is the one that employed me in the transaction. * * *"

He further states: "Now there was no intimation by Joseph White or Clayton White that anybody else but Clayton White was the one employing me to represent Joseph White in the case."

On cross-examination Judge Landry testified as follows:

"Q. But you at no time before the trial, told Mr. Clayton White that you looked to him for the payment of the fee? A. No, he came to get me and I was told by Mr. Palermo that he suggested my name to Clayton White. * * *

"Q. You at no time, prior to your rendering services, by the trial of this case of Joseph White, ever told Clayton White, in so many words, that you looked to him for the payment of your fee? A. No Sir, I never told him I looked to him for payment of the fee but I thought that he understood it; he came to get me and he is the one I looked forward to; he never told me in our conversations, after bringing me to his place of business to discuss the case and informed me that I was employed in the matter, he never told me that he would not be responsible for the fee.

"Q. But prior to the trial of the criminal case, you, yourself, the attorney representing the man other than the party you thought you were looking to for the fee, ever told Mr. Clayton White you looked to him for the fee, before the trial? A. No Sir, I didn't because I was informed by Mr. Palermo that my name was suggested for employment, not to Joseph White but to Clayton White and subsequently it was followed by a telephone message by Mr. Palermo in which he informed me he decided to employ my services and he and Clayton White were coming to get me and from my house I went to Clayton White's place of business where I was acquainted with the facts of the case and where I was told I was employed, not by Joseph White but Clayton White. * * *

"Q. Before you sent the letter of April 18th, which is in evidence, you never, yourself, told Mr. Clayton White that you looked to him for payment of the fee? A. I must

have, because that letter states, I talked this matter over with him.

"Q. But you stated also positively, before the trial of Joseph White, you never informed Clayton White that you looked to him for the payment of the fee? A. No, Sir, I never told him that."

The plaintiff also admitted, under cross-examination, that he did not discuss the amount of his fee with Clayton White at any time prior to the trial of the case and, in fact, not until some time after the case was entirely finished.

Joseph White, as a witness for defendant, testified that he engaged the services of the plaintiff and not his brother, Clayton White; that it was never contemplated, understood, or stated that Clayton White employed plaintiff and would pay the attorney's fee for representing him; that, after he was acquitted, he was informed by the plaintiff that his fee was $150; that he went to the office of plaintiff and stated that he was pleased with his services and that the amount of the bill was entirely satisfactory, but that at that time he only had $10 with him and would see his mother in order to get some homestead stock which would be mortgaged or pledged in order to pay the plaintiff and that the plaintiff agreed that this arrangement was satisfactory; that, when this plan failed because he was unable to induce his mother to surrender the homestead stock, he made a further proposition to the plaintiff to liquidate the indebtedness in installments, which the plaintiff also agreed to; and that he owes the money, but, due to unprecedented financial conditions, he is unable to pay it at the present time.

Dominick and Jake Ciaccio testified as witnesses for the defendant, and stated that Dominick Ciaccio, at the request of Mr. Palermo, a relative by marriage, induced the defendant to endeavor to have his brother, Joseph White, employ Mr. Palermo, who subsequently associated Mr. Landry with him in the case. They state that they were present in plaintiff's office after the trial of the criminal case on the occasion when Joseph White proposed to liquidate the attorney's fees by pledging certain homestead stock which he expected to obtain from his mother, and that the plaintiff agreed thereto.

Defendant testified that he and his brother had been on unfriendly terms, and that it was only on the insistence of the two original attorneys that he consented to sign his brother's bond; that it was at the suggestion of Dominick Ciaccio, his father-in-law, that he recommended the employment of Mr. Charles Palermo, the plaintiff's office associate; that Mr. Palermo suggested that the plaintiff should be associated in the case and telephoned the plaintiff from defendant's drug store to wait at home as he was coming to see him; that Mr. Palermo did not have an automobile,

so defendant prove Mr. Palermo to plaintiff's home and both of them back to the drug store, where Mr. Landry was introduced to Joseph White; that Joseph White related all the facts in the case to the attorney; that he (defendant) did not say or do anything, other than go get the plaintiff in the automobile, to indicate any intention on his part of employing the plaintiff to represent his brother; that the plaintiff at no time suggested that he considered that defendant was employing him and would pay the fee; that he did not discuss the amount of the fee with him. and that he did not hear from the plaintiff about an attorney's fee in the matter until four months later, April 18, 1932, when he received a letter from plaintiff making demand for payment.

In rebuttal, the plaintiff offered the testimony of Mr. Generelly and Mr. Connor, who stated that it was with difficulty that they got Clayton White to agree to sign his brother's bond, and that they never considered themselves employed in the matter and had assisted Joseph White in securing a bail order and furnishing a bond as a matter of friendship and with the hope of employment in the case. Their testimony contradicts the statement of Joseph White in one immaterial respect.

The plaintiff in rebuttal testified that Joseph White came to his office on one or two occasions, and that one morning after the trial of the criminal case, in his office, "Mr. Joe White told me, 'I only have ten dollars on me Judge and I would not offer you that.' I said, "Well, I am not asking you for that,' he said, 'I will see my mother, she has some homestead stock and I will get this homestead stock from her and mortgage it or pledge it and pay you with it,' and I said, 'that will be all right.'"

From a careful reading of the record, it appears to us that, while the plaintiff states that Clayton White and not Joseph White employed him, the facts of the case as related by the plaintiff show that the defendant did not employ him. The mere fact that the defendant went with Mr. Palermo to the plaintiff's home and brought him back in an automobile to defendant's drug store, and that the attorney there interviewed the defendant's brother in defendant's presence, certainly would not constitute a contract of employment between the plaintiff and the defendant. Plaintiff admits that he did not discuss with the defendant the amount of his fee. He also admits that the defendant did not say he was employing him and would pay the fee charged by the plaintiff to defend his brother. Plaintiff assumed, according to his own testimony, that because defendant came to get him he was thereby employed by him.

■ Plaintiff in his argument at the bar said that, if he had considered that he was employed by Joseph White, he would have re-

quired a cash fee in advance of the trial of the case, because Joseph White had told him of his impecunious circumstances. Since Joseph White informed him of his financial embarrassment at the time, it would appear to us that, if the plaintiff intended to hold defendant responsible for his fee, he would have at least informed him of that fact, but he admits that he did not do so. It was incumbent upon the plaintiff at that time to make it clear that he would not accept the case unless the defendant agreed to pay his fee.

There is no doubt that Joseph White is liable for the attorney's fee, but for us to say that under the circumstances of this case that Clayton White is also liable would be to give the plaintiff a right to recover against the defendants as debtors in solido.

Article 2093 of the Revised Civil Code provides:

"An obligation in solido is not presumed; it must be expressly stipulated.

"This rule ceases to prevail only in cases where an obligation in solido takes place of right by virtue of some provisions of the law."

Furthermore, plaintiff admits he attempted to collect the fee from Joseph White after the criminal case was tried, thus indicating that he looked to Joseph White, and not defendant, for payment.

It is our opinion that the plaintiff has failed to establish a contract of employment with defendant. Massey v. Murray, 17 La. App. 319, 135 So. 738; Dr. Hyman v. Vitrano, 2 La. App. 59; Lawrason v. Banister, 13 La. App. 610, 128 So. 318. Schiro v. Macaluso, 13 La. App. 88, 126 So. 244.

For the reasons assigned, the judgment appealed from is annulled, avoided, and reversed, and it is now ordered that there be judgment in favor of defendant dismissing plaintiff's suit at his cost.

Reversed.

WESTERFIELD, J., dissents.