GUIDRY, Judge.
This is a suit for recovery of attorney’s fees for professional services rendered for the benefit of Kenneth H. Cagle, Jr. The trial court held in favor of the plaintiff law firm and against Kenneth H. Cagle, Jr. in the amount of $14,683.70. Plaintiff’s suit as to the three other named defendants, i.e., Kenneth H. Cagle, Sr., Joe M. Cagle, Sr., and The Cagle Partnership, was ordered dismissed. Plaintiff only appeals the dismissal of this suit as to the defendant, Kenneth H. Cagle, Sr. and The Cagle Partnership.
The sole issue on appeal is whether the trial court erred in not holding Kenneth H. Cagle, Sr. and/or The Cagle Partnership also liable for the attorney’s fees incurred in the representation of Kenneth H. Cagle, Jr.
FACTS
In May of 1979, Kenneth H. (Bobby) Ca-gle, Sr. telephoned James J. Cox, an attorney who had represented the Cagle family in previous legal matters, requesting him to represent his major son, Kenneth H. (Kenny) Cagle, Jr., in a civil matter. The matter involved a claim by the owners of a Savings and Loan Association by whom Kenny was employed in the year 1978. The Association was asserting that Kenny had overcharged some customers for premiums for credit life insurance and had failed to refund some $54,000.00 of earned rebates to customers. Bobby was the president and chief executive officer of the Savings and Loan Association at the time of Kenny’s employment.
Because of a conflict of interest, Cox was unable to represent Kenny in the matter. He did, however, recommend J. Michael Yeron, an attorney-partner in the plaintiff law firm. Cox called and arranged a meeting between the Cagles and Veron.
On June 1,1979, Cox accompanied Bobby and Kenny Cagle to Veron’s office. It was then decided that Veron would represent Kenny in the civil matter. Veron advised the Cagles that he would charge an hourly rate for his services. He also cautioned them that if the matter turned into a criminal one, it could become expensive. No written employment agreement was ever entered into.
Veron engaged the services of Jim Nichols, a certified public accountant, to aid him in handling Kenny’s case. After numerous meetings and conferences with the officials and auditors of the Savings and Loan Association, the Association’s claim was dropped. The entire civil matter was resolved in August of 1979. Veron thereafter sent Kenny a bill for his fee and for *500 the expenses incurred to that date, totaling $4,774.70.
Despite the fact that monthly bills were sent to Kenny informing him of the balance due on his account, only one $300.00 payment was made during the following year. In April of 1980, Veron sent a letter to Bobby, informing him of the outstanding balance on Kenny’s account, and explaining that a retainer was not required at the time of employment because of Bobby's standing in the community. Veron requested that Bobby “do whatever you can to pay the balance due us”. In November of 1980, Bobby sent a check for $300.00 for payment on Kenny's account.
In March of 1981, Veron was advised by the United States Attorney’s Office that the subject of Kenny’s alleged overcharges and unpaid rebates had been referred to it by the Federal Home Loan Bank Board for criminal prosecution. Veron was advised that Kenny’s only option was to accept prosecution by bill of information rather than a grand jury indictment.
Veron thereafter called a meeting with Kenny and Bobby to discuss the situation. He informed them that since the matter had turned into a criminal one, any further fee would be charged on a flat basis and could go as high as $15,000.00. Veron also stated that the past due balance on Kenny’s account would have to be brought current before he would undertake any further employment on Kenny’s behalf. Within the next two weeks, Bobby made three payments of $1,000.00 each towards Kenny’s past due account, leaving a balance of $1,474.70.
Veron and Nichols met with federal authorities on several occasions and were ultimately successful in persuading them not to file criminal charges against Kenny. The entire matter was resolved in April of 1981. A fee of $15,000.00 was thereafter charged against Kenny’s account.
Again plaintiff sent monthly bills to Kenny for the $16,258.70 balance due on his account. In November of 1981, the plaintiff law firm paid the fees owed to Jim Nichols and charged this amount against Kenny’s account. In March of 1982, certified letters were sent to Kenny and Bobby informing them that if the balance due on the account was not paid within seven days, suit would be filed against them. Kenny wrote a letter to Veron the next day stating in part, “Please don’t file anything until I can talk to my dad and uncle and we can meet with you. I think there has been some misunderstandings that, hopefully, can be cleared up”. Kenny wrote to Veron again the following month stating, “This is all I could send immediately but will send more soon.” A check for $1,000.00 was attached to the letter and credited against Kenny's account.
Seven more months passed without any payments on the account. On November 1, 1982, Veron sent letters to Kenny, Bobby and Joe Cagle (Kenny’s uncle) informing them that $15,728.70 remained due on Kenny’s account, and that suit would be filed within two weeks if nothing was done to settle the account. Kenny sent Veron a payment of $1,000.00 the following week with a letter stating, “I have every intention of paying all of it, however, excepting a windfall, it is going to take time. I just don’t have the money, Mike, nor does my Dad. I had to borrow this money I’m sending you from my employer. Hopefully my payments will be larger and much more frequent in the very near future”.
No further payments were made on the account and this suit was filed on July 29, 1983 for the unpaid attorney’s fees of $14,-728.70. Named as defendants in the suit were Kenny, Bobby, Joe M. Cagle, Sr., and The Cagle Partnership, a universal partnership between Bobby and Joe. Bobby, Joe and The Cagle Partnership filed an exception of no right/no cause of action, which was overruled.
Trial on the merits was held on March 19, 1984. Judgment was rendered in favor of plaintiff and against Kenneth H. Cagle, Jr., in the amount of $14,683.70. Plaintiff’s claims against Bobby, Joe and The Cagle Partnership were dismissed. Plaintiff’s appeal is directed only towards the dismissal *501 of its suit against Bobby Cagle and The Cagle Partnership.[1]
ARGUMENT
Appellant urges error in the trial court’s conclusion that Bobby Cagle did not employ the plaintiff to represent Kenny Cagle in the matters aforementioned, and therefore is not personally responsible for the fee generated as a result of that representation. In the alternative, appellant contends that if no contract existed between plaintiff and Bobby Cagle, plaintiff is entitled to recover pursuant to quasi-contract.
At the outset, we observe that, as to Kenny Cagle, the trial court’s judgment is final. The remaining defendants-appellees question neither the reasonableness of the fee charged nor that the sum of $14,683.70 remains unpaid.
Louisiana Civil Code Article 2278, Section S, (1870), provides that parol evidence is inadmissible to prove a promise to pay the debt of a third person.[2] Since plaintiff concedes that no writing exists wherein Bobby promised to pay the legal fees incurred in representing Kenny, it is incumbent upon plaintiff to prove that a contract of employment was entered into between itself and Bobby Cagle.
The general rule is that an attorney is not entitled to receive compensation for his services from anyone other than his client. The right of an attorney to collect fees is based upon contract, regardless of the value and benefit others have derived from his services. Broussard, Broussard & Moresi, Ltd. v. State Auto & Casualty Underwriters Company, 287 So.2d 544 (La.App. 3rd Cir.1974), writ refused, 290 So.2d 908 (La.1974); Lyons v. City of Shreveport, 339 So.2d 466 (La.App.2d Cir. 1976), writ denied, 341 So.2d 905 (La.1977).
A contract of employment between an attorney and client can be either express or implied. The attorney seeking to recover a legal fee from a client has the burden of proving by a preponderance of the evidence the contract by which he seeks recovery. Toomer v. Breaux, 146 So.2d 723 (La.App. 3rd Cir. 1962).
The trial court, in orally assigned reasons for judgment, stated in pertinent part as follows:
“[Kenny] Cagle had some very, very serious problems arising out of his employment with Guaranty and working for his father there at Guaranty. The Court well recognizes that those problems concerned the entire Cagle family, not only the father, Kenneth, but Uncle Joe. I don’t think there’s any question, either, viewing the evidence, that Mr. Yeron was engaged to do all of this. The questions is, of course, who has to pay. Well, viewing all the various statements that were sent out and so on, these were addressed to what Mr. Veron terms his client; that was Kenny, at his address on Chateau Circle. It’s true that Mr. Bobby Cagle made some payments as the criminal matter cropped up, and I think he paid some $3,000.00. In viewing all of this, though, the Court simply does not come to the conclusion that Bobby Cagle himself agreed to pay the fee, and we find that he was not responsible for the fee....”
As we appreciate the above, the learned trial judge concluded as he did for the reasons that the various statements of account sent by the plaintiff were addressed to Kenny Cagle at his home and because Bobby Cagle did not categorically agree to pay the attorney’s fees incurred in the representation of Kenny Cagle. Although we find no error in these findings of fact, we consider the trial court's ultimate conclu *502 sion on this crucial issue to be founded on too narrow an appreciation of the entirety of the evidence and, therefore, manifestly erroneous.
Our law provides that a contract is formed by the consent of the parties established through offer and acceptance which, absent prescribed formality, may be made orally, in writing, or by action or inaction that, under the circumstances, is clearly indicative of consent. Articles 1541, 1756, 1906 to 1908, 1918, 1940, 1942, 1948, 1966, 2053 to 2055, 2448, 2462, 2550, 2933, 2989, 3246, 3450, La. Civil Code of 1870 re-enacted in 1984 by Act No. 331 Sec. 1, effective January 1, 1985, as La.C.C.Art. 1927.
Preliminarily, we note the record makes clear that from the very outset of the circumstances giving rise to this litigation, all parties were aware of Kenny’s poor financial condition. It is uncontradict-ed that it was Bobby Cagle who personally undertook to secure representation for his son, Kenny, and to that end, ultimately met with Veron, through the efforts of Bobby’s attorney, James J. Cox. Veron testified that at this meeting, with Mr. Cox present, all discussions about fees were directed towards Bobby and not Kenny. Further, that at this meeting, Bobby did most of the talking. In sum, it was Veron’s testimony that he was hired by Bobby to represent Kenny.
Mr. Cox, a disinterested witness, testified that he recalled this initial meeting. He corroborated the testimony of Veron to the effect that most of the conversation was between Bobby and Veron stating “... and so I recommended that Mr. Veron take on the case, and Bobby asked him to do so, and Mr. Veron agreed to do so”. Although Cox could not remember the exact terms of the employment agreement, he stated, “... but I remember the essence of what happened was that Bobby employed Mike (Veron)”.
Following successful termination of the civil matter, the plaintiff’s statement for the fees and expenses incurred to date were sent to Kenny, however, except for two small payments, one by Kenny and one by Bobby, the statement went unpaid for almost two years until Kenny was threatened with criminal prosecution. Following this turn of events, there was another meeting between Veron, Bobby and Kenny, at which meeting Veron agreed to undertake representation of Kenny conditioned upon payment of the current account and the understanding that a further fee up to the amount of $15,000.00 would be due. This meeting was also attended by James B. Nichols who testified that, in response to Veron’s warning that his representation of Kenny could be very expensive, Bobby responded, “whatever it takes, it takes”. We believe it to be significant that following this meeting, it was Bobby who made payment of the previous statement which, as aforestated, was a condition of Veron’s employment.
Following successful termination of this latter representation, statements were again sent to Kenny, however, without success. Thereafter letters were directed to Bobby requesting payment. Presumably, as a result of these demands, Bobby contacted Veron and offered to convey certain real estate owned by Bobby in payment of the $15,000.00 fee. Veron declined the offer. We likewise consider this latter offer by Bobby to be of significance.
The facts above set forth are uncontra-dicted.
The sum of Kenny’s and Bobby’s testimony is to the effect that Bobby never categorically agreed to pay his son’s legal fees and was never specifically told by Veron that he was expected to do so. Additionally, Bobby testified that he attended the meetings between Veron and Kenny and made such payments as he did out of concern for his son. Although this testimony is likewise uneontradicted, we do not consider it to be decisive when considered in light of the actions of the parties and the testimony of Mr. Cox and Mr. Nichols.
Appellees urge that the holding in Landry v. White, 146 So. 509 (Orl.App., 1933), dictates that the trial court judgment be affirmed. We disagree. The facts present *503 in Landry are clearly distinguishable from the circumstances present in this case. In Landry, an attorney brought suit for professional fees rendered to defendant’s brother in a criminal matter. Defendant first contacted an attorney named Palermo to handle his brother’s case. Palermo decided that he was not competent to handle the criminal matter and recommended that defendant contact plaintiff Landry. Defendant and Palermo drove to plaintiff’s home, picked him up and brought him to defendant’s place of business. Plaintiff was then introduced to defendant’s brother, who related to him the facts and circumstances of the case. Plaintiff undertook representation of the brother and succeeded in having him acquitted.
In Landry, no fee arrangements were ever discussed in the defendant’s presence; there was only one meeting between Landry and the defendant; there was no evidence whatever of any agreement of employment between Landry and defendant; and, defendant never paid or offered to pay all or any part of the fee charged for representation of his brother. The only similarity between Landry and the instant case is the impecuniosity of defendant’s brother and the failure of defendant to categorically agree to payment of the fee.
In our view, the record considered in its entirety, prompts the conclusion that plaintiff has established by a preponderance of the evidence that a contract of employment existed between it and Bobby Cagle for the representation of Kenny Cagle, and, therefore, Bobby Cagle is liable for the amount sued for. The trial court clearly erred in holding otherwise.
There is no evidence in the record to establish any liability on the part of Joe Cagle, Sr., or The Cagle Partnership, and the trial court’s judgment dismissing plaintiff’s suit against these defendants will be affirmed.
For the above and foregoing reasons, the judgment of the trial court will be reversed in part, affirmed in part, and recast to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that judgment be and is hereby rendered in favor of the plaintiff, SCO-FIELD, BERGSTEDT, GERARD, MOUNT & VERON, A PROFESSIONAL LAW CORPORATION, and against the defendants, KENNETH H. CAGLE, SR. and KENNETH H. CAGLE, JR., in the full and true sum of FOURTEEN THOUSAND SIX HUNDRED EIGHTY-THREE AND 70/100 ($14,683.70) DOLLARS, together with judicial interest thereon from the date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that judgment be and is hereby rendered in favor of the defendants, JOE CAGLE, SR., and THE CAGLE PARTNERSHIP, dismissing the demands of the plaintiff.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the expert witness fees of Joe T. Tritico be and are hereby fixed in the sum of $100.00.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendants, KENNETH H. CAGLE, JR., and KENNETH H. CAGLE, SR., pay all costs of these proceedings, both at the trial level and on appeal.
REVERSED IN PART, AFFIRMED IN PART and RENDERED.

. Although plaintiff devolutively appealed from the judgment of the trial court which dismissed its suit as against Bobby Cagle, Joe Cagle, Sr. and The Cagle Partnership, in brief and argument to this court, plaintiff assigns no error in the trial court’s action insofar as it dismissed its demands against Joe Cagle Sr.

. La.C.C.Art. 2278 was vacated and re-enacted in 1984 by Act No. 331, § 1. Effective January 1, 1985, the substance of Article 2278, section 3, is now contained in La.C.C. Art. 1847.