LAND, J.
 

 This is a suit by the Westwego Canal & Terminal Company against Paul Pizanie and Clarence Pizanie for $2,500, the alleged value of a building which was torn down and removed by defendants from the premises of plaintiff.
 

 Defendants, on the one hand, claim title to the building by virtue of
 
 unrecorded
 
 acts of sale from Herman Waldmeier to Leo M. English and Clarence Pizanie, October 28, 1919, and from Leo M. English to Paul Pizanie, December 16, 1921.
 

 Plaintiff, on the other hand, asserts ownership of the building in question, and of the tract of land upon which it is erected, by virtue of a notarial act of sale from W. T. Nolan, dated July 9,1925,
 
 duly registered,
 
 and including all of the buildings and improvements situated on the land purchased.
 

 . W. T. Nolan acquired the property and improvements, through mesne conveyances, from Robert R. Barrow.
 

 The defense urged by the Pizanies is that they had entered into a written contract with Robert R. Barrow, a preceding owner of the land, and that, under this contract,
 
 which, was not recorded,
 
 they were permitted to remove the building.
 

 Defendants further claim that, prior to July 9, 1925, when plaintiff company purchased the land from W. T. Nolan, they had informed Nolan of the fact that defendants were the owners of the building known as the Shrimp Canning Factory; that, at the time they entered into an agreement,
 
 which, was not recorded,
 
 to pay a rental upon the land, Nolan acknowledged that the building belonged to defendants, and based the rental
 
 upon the amount
 
 of land occupied by the building fronting upon the canal of the plaintiff ; and that Nolan had been informed repeatedly that the building which was removed, as well as numerous other buildings upon the land purchased by plaintiff, were owned by various persons and were not owned by the predecessors in title of W. T. Nolan and of
 
 the plaintiff.
 

 W. T. Nolan, at the time of the sale of the property to the Westwego Canal & Terminal Company, was, and still is, president of that company.
 

 Judgment was rendered in the lower court holding that plaintiff is estopped from setting up title to the building claimed by defendants, and dismissing plaintiff’s suit at its cost.
 

 From this judgment plaintiff has appealed.
 

 
 *1071
 
 1. It has become trite law in this state that a third person can acquire a good title from the owner of record, even though knowing this owner is not the true owner. This view has been repeatedly affirmed. Mc-Duffie v. Walker, 125 La. 152, 51 So. 100; Gonsoulin v. Sparrow, 150 La. 103, and numerous authorities cited at page 107 and page 108, 90 So. 528, 529. Innocent third persons who deal on the faith of the public records are protected thereby. They are not affected by any knowledge they may acquire dehors the record. Manifestly, in this case, estoppel of plaintiff to claim title cannot be based upon any knowledge which the president of plaintiff company may have had, outside of the public records, as to the ownership of the building in dispute.
 

 2. Louisiana Land & Pecan Co. v. Gulf Lumber Co., 134 La. 784, 64 So. 713, 714, was a petitory action to recover a tract of land with the buildings and improvements thereon. The title to the land was not in dispute. The buildings had been erected on the' land by the alleged authors of the defendant’s title thereto and the defendant claimed title to the buildings. Its title to the buildings
 
 had never been recorded.
 
 Under these circumstances the court held that, although the title to the land could be in one party and the title of the buildings in another party, if the title to the buildings was not recorded, it could not affect the buildings because they were
 
 immovables by nature.
 

 The court said: “ ‘The conventional mortgage, when once established on an immovable, includes all the improvements which it may afterwards receive.’ Civil Code, art. 3310.
 

 “ ‘Lands and
 
 buildings
 
 or other constructions, whether they have their foundations in the soil or not
 
 are immovable by their nature.’
 
 Civil Code, art. 464.
 

 “All contracts affecting
 
 immovables,
 
 if not duly recorded are ‘utterly null and void, except between the parties.’ Civil Code, art. 2266.
 

 ' “It follows, from these codal provisions, that the plaintiff holds the legal title to the land and buildings by a duly recorded chain of conveyances; and that the defendants’ alleged title to the buildings,
 
 never having been recorded,
 
 is ‘utterly null and void’ as against the plaintiff.” (Italics ours.)
 

 In Vaughn v. Kemp, 4 La. App. 682, it is also said: “Article 464 of the Code is a broad, concise statement of the law that:
 

 “ ‘Lands and buildings or other constructions,
 
 whether they have their foundations in the soil or not, are immovable by their nature.’
 
 (Italics by the Court.)
 

 “There is no qualification of this rule. The law makes no distinction between buildings erected by the owner and those erected by tenants or others. If they are erected on the land, they are immovable by their nature.
 

 “There are also things which are immovable by their destination, as:
 

 “ ‘Things which the owner of a tract of land has placed upon it for its service and improvement.’ Civil Code, art. 468.
 

 “Under this article things become immovable by destination only when placed thereon by the owner of the soil.
 

 “But the provisions of the Code, Article 464, with reference to things immovable by their nature, does not state that they shall be placed on the soil by the owner thereof.
 

 
 *1073
 
 “It therefore follows that a building placed upon leased premises by the lessee is an immovable under Article 464 of the Code.”
 

 Under the authority of the cases above cited, the
 
 unrecorded
 
 titles of defendants to the building in dispute are utterly null and void as against plaintiff, the true and lawful owner of this building by virtue of its recorded title from W. T. Nolan, of date July 9, 1925.
 

 The tearing down and removal of this building by defendants was therefore illegal and unwarranted, and they must pay the fair value of same to plaintiff.
 

 The value of the building is variously estimated. The superintendent of plaintiff company described the building ás being 135 feet in length by 40 feet in width, and as well worth $2,600.
 

 At the time the building was removed by defendants it was about twelve years old and needed repairs. Paul Pizanie is familiar with the cost of construction of buildings of this kind, and testifies that a fair valuation would be from $1,500 to $2,000. We have decided to adopt a medium valuation of $1,750. The building was torn down and removed from plaintiff’s premises by defendants on March 1, 1928.
 

 It is therefore ordered that the judgment appealed from be annulled and reversed.
 

 It is now ordered that plaintiff recover judgment against defendants, in solido, in the sum of $1,750, with legal interest thereon from March 1, 1928, until paid, and all costs.
 

 ROGERS, J., concurs in the decree.