### DAVIS–WOOD LUMBER CO., Inc., v. INSURANCE CO. OF NORTH AMERICA et al.

### SAME v. SECURITY INS. CO. OF NEW HAVEN, CONN., et al.

### SAME v. COLONIAL FIRE UNDERWRITERS OF HARTFORD, CONN., et al.
### No. 1315.

Court of Appeal of Louisiana. First Circuit. May 8, 1934.

Lemle, Moreno & Lemle, of New Orleans, for appellants.

Harvey E. Ellis and Frank B. Ellis, both of Covington, for appellee.

MOUTON, Judge.

In the above-entitled cases which were consolidated for trial below, the district judge rendered the following opinion:

"The above entitled and numbered three cases were consolidated for the purpose of trial and the testimony was taken and filed in the first numbered suit. These reasons for judgment will therefore apply to all three suits.

"On June 12, 1929, the plaintiff company secured a judgment against the New Era Realty Company, Inc., recognizing its lien and privilege on certain improvements located on a plot of ground described as lot 3 of block 13 of Suburban Estates in St. Tammany Parish. The title to this property was in the name of the New Era Realty Company, Inc. It appears that a survey made by K. H. Barrow, of Lot 3 of Square 13, aforesaid, overlapped a ten acre tract which at that time stood in the name of C. C. Viguerie. In other words, there was a question of the boundary line between the lands of the New Era Realty Company and the said Viguerie. It developed by a survey made by Mr. Pugh, that the residence which was destroyed by fire and out of which this action arises, was located on the ten acre tract owned by Viguerie. May 22, 1930, Viguerie sold the ten acre tract of land to Mr. Arthur O'Shaughnessy.

"With this situation as to the title to the property on which the improvements were located the plaintiff in order to secure its claim and lien, secured a policy of insurance on the improvements which was written by Marshall J. Smith & Co. Ltd., insurance agents representing several insurance companies, who were advised as to the condition of the title to the property. A policy was written by

these agents for $4,400.00, on the 26th day of September, 1930, for one year covering the improvements on said property in the name of the New Era Realty Company, Inc., and/or Clovis Viguerie, with the mortgage clause in favor of the plaintiff as judicial mortgagee. In view of the confused condition of the title to the property on which the buildings were located the following clause was inserted in this policy:

" 'Permission is hereby granted for the property insured hereunder to stand on leased ground or ground to which the title may be questioned.'

"At the expiration of this policy it was renewed under the same terms and conditions, and on October 12, 1931, the same agents who had charge of this insurance issued policies covering these improvements in the three insurance companies made defendants in this suit, in the proportions of one half to the Colonial Fire Underwriters and one fourth each to the other two companies. These policies were issued on practically the same terms as the previous policies covering the same property, with the exception that through an error of the agent the above quoted clause was omitted from the policy in the Security Insurance Company, but it is admitted that this was an error of the agent in failing to insert this clause in this policy. In any event as the agents had full knowledge of the conditions prevailing, the situation is the same as though this clause had been inserted in this policy. Act 222 of 1928.

"The residence, part of the property covered by these policies, was destroyed by fire on February 4, 1932. The defense is that the conveyance of the property by Viguerie to O'Shaughnessy on May 22, 1930, carried with it a conveyance of the residence situated on that property and therefore at the time of the issuance of all the policies as well as at the time of the fire the plaintiff had no lien on or interest in the property, and therefore cannot collect insurance for its loss. The defendant companies offer and tender a return of premiums paid on the policies. Neither the plaintiff nor the defendants knew that the ten acre tract had been sold by Viguerie to O'Shaughnessy until after the fire. O'Shaughnessy had taken out insurance on the house in his own name and had collected the insurance on the house in his name after the fire, but none of the parties to this suit knew of that fact.

"The residence which burned was located on the ten acre tract surveyed by Mr. Pugh and also on the lot as surveyed by Barrow and designated as Lot 3 of Square 13, (See plat made by Pugh and filed in evidence). However, the title to the ten acre tract antedated and primed that of said Lot 3. It was clearly the intention of the parties to the insurance contract to recognize this conflict in these overlapping descriptions to the two tracts of land as the permit inserted in the policies giving permission for the property insured to stand on land to which the title may be in dispute covered this situation.

"The fact that the New Era Realty Co. built a house on land to which the legal title was in another did not prevent the house from continuing to remain the property of the Realty Co. C. C. Article 508. Viguerie as the legal owner of the title to the land on which the house was built by the Realty Company did not become vested with the ownership of the house because he never paid the Realty Co. for its value as required by this Article of the Code. Viguerie could convey no title to the house as he had none himself. C. C. 2452. The only way the transfer of the land by Viguerie to O'Shaughnessy on May 22, 1930, could have defeated the ownership of the Realty Co. of the house would have been on the assumption that said O'Shaughnessy was a bona fide purchaser without knowledge of the ownership of the house in some other than Viguerie. C. C. 2015. Wolf v. Carter, 131 La. 667, 60 So. 52.

"Of course, if O'Shaughnessy purchased in good faith and without notice that the Realty Co. owned the buildings on the property, he acquired a good title to the improvements on the land and the ownership of the house on which the insurance was carried in the name of the Realty Company was transferred from that company to O'Shaughnessy, and consequently the plaintiff as the mortgagee could have no interest to protect by insuring the house as the company suffered no loss by its destruction. It therefore becomes an important question to determine whether or not O'Shaughnessy was a purchaser in good faith and without any knowledge of the conditions under which the improvements were placed on said property.

"It is shown from the testimony of Mr. Pugh that there is a fence around lot 3, which was put there about the time the improvements were made. In other words this fence which followed the lines of lot 3 ran over on the ten acre tract and inclosed the improvements. The residence was at a rather unusual place and was facing at a very irregular and unusual angle on the ten acre

tract. It was at the rear of the property. The property line ran through the chicken house and some of the fence. Yet O'Shaughnessy says he never had the line run before purchasing the property, nor did he have any examination made of the title. He paid out in cash five hundred to one thousand dollars and the remainder of the consideration was a pre-existing debt which Virguerie owed him. The whole situation of the improvements would lead 'any reasonable person to believe that they were never intended to be placed on the ten acre tract of land. I cannot believe that O'Shaughnessy purchased this ten acre tract of land believing in good faith that these improvements belonged to Virguerie, and therefore as to these plaintiffs he cannot be classed as a bona fide purchaser.

"The title to the residence never passed to O'Shaughnessy, but remained in the insured, the Realty Co. located on land the title to which was in dispute as permitted by the policies. The plaintiff has an interest and is entitled to recover. The total loss sustained by plaintiff on the residence was $2085.26 (Tes. P. 20) of this amount the Colonial Fire Underwriters is liable for one half, and the other two companies one fourth each."

█ It appears from the evidence as it is recognized by the court in the foregoing opinion, that the residence which was destroyed by the fire was built on the ten-acre tract of land owned by Virguerie. This tract of land, the record shows, was sold by Virguerie, May 22, 1930, to Arthur O'Shaughnessy, with the improvements that had been erected thereon by the New Era Realty Company, Inc., against which plaintiff's privilege or lien as furnisher of materials had been recorded. The court said, the fact that the title to the land was in Virguerie did not prevent the house, later destroyed by fire, from continuing to remain the property of the New Era Realty Company, citing article 508, C. C., in support of that conclusion; and which we find to be correct.

██ The court then says:

"Virguerie could convey no title to the house as he had none himself. C. C. 2452."

This article we find must, however, yield to article 2266, C. C., where third persons purchasing on the faith of the public records are protected, unless they have knowledge of the nullity or defect in the title.

The district judge, after making the sweeping declaration that Virguerie could convey no title as he had none himself, recognized

the correctness of the principle, above referred to by us, as the court further said:

"Of course, if O'Shaughnessy purchased in good faith and without notice that the Realty Co. owned the buildings on the property, he acquired a good title to the improvements on the land and the ownership of the house on which the insurance was carried etc."

The court then says:

"It therefore becomes an important question to determine whether or not O'Shaughnessy was a purchaser in good faith and without any knowledge of the conditions under which the improvements were placed on the property."

And finding that O'Shaughnessy was not in good faith when he bought the land with improvements, the court rendered judgment against defendant insurance companies.

The court referred to the fact that the house was built at the rear of the land which it found to be an unusual place; also to the fact that the property line ran through the chicken house, that O'Shaughnessy had never had the lines run before purchasing, and had bought without examination of title. The court then refers to the fact that O'Shaughnessy paid $500 in cash, and for the remainder of the price, canceled a pre-existing debt which Virguerie, his vendor, owed him. It is, however, from the location of the buildings and the running of the lines that the district judge drew the inference that O'Shaughnessy was not in good faith.

We cannot see, from the facts to which the district judge refers, why Mr. O'Shaughnessy should have inferred, or was put on notice, that the house or residence Mr. Virguerie was selling him with the land was not owned by his vendor. A purchaser buying under such circumstances, without any other fact to raise suspicions about the ownership of the thing he buys, cannot, in our opinion, be held to have acquired in bad faith.

The fact, also, that he paid a portion of the price in cash and canceled a pre-existing debt for the balance, is no indication that he had not purchased in good faith.

The proof is that Mr. O'Shaughnessy was living in New Orleans at the time he bought and where he was still residing when his evidence in this case was taken under commission. He first went, he says, to the office of counsel for plaintiff in this case to have him pass the act of sale for this property; not finding him at his office, had the deed drawn by Mr. Smith, deputy clerk of court.

Mr. O'Shaughnessy testifies that the residence in question was used as a summer home by him, and there is nothing to indicate that he entertained any doubts as to his ownership. It is shown that he insured the residence and after it was destroyed by fire collected over $3,000 on his policy of insurance. It is obvious, as he testifies, that he had no interest in the outcome of this suit, and we fail to see that he could have had any purpose to testify falsely in giving his testimony.

We are of the opinion, even considering his evidence dehors the record by which the lower court was guided in reaching its conclusions, we could not, however, agree to the finding of the lower court, as we are of the opinion that Mr. O'Shaughnessy was a purchaser in good faith, grounding ourselves on the facts and circumstances of the case, which led the court to a different conclusion.

■ In the case of Westwego Canal & Terminal Co., Inc., v. Pizanie et al., 174 La. 1068, 142 So. 691, 692, where the ownership of a building was in dispute, the court said:

"Innocent third persons who deal on the faith of the public records are protected thereby. They are not affected by any knowledge they may acquire dehors the record."

Even conceding that Mr. O'Shaughnessy was apprized of the facts from which the court below inferred made him a purchaser in bad faith, such evidence being dehors the record, he could not be affected by such knowledge, under the ruling in the Pizanie Case. He was an innocent third person within the meaning of the court in that decision, unless he had knowledge from the record of the defect or nullity of the title to the residence in Virguerie, his vendor. There is nothing in the evidence to indicate that he had or could have obtained such knowledge from the public records by which he was protected, under the doctrine of the Supreme Court in the hereinabove cited case.

■■ The residence in question remained in the ownership of the New Era Realty Company up to the sale of the ten-acre tract of land with improvements by Virguerie to O'Shaughnessy; and, prior thereto, as against the New Era Realty Company was subject to the lien of the plaintiff company for the materials that had gone into the construction of that building. Virguerie was, however, the record owner of the tract of land on which this residence was erected but O'Shaughnessy not having, when he bought, any knowledge from the public records, and in fact not even dehors the record, that the New Era Realty

Company had built the residence, and had given a lien on it, acquired title to the house which was conveyed in the deed of sale, as part of the improvements sold with the land. Even if the improvements had not been included they would have been transferred with the land, under the provisions of article 464, C. C., which says that: "Lands and buildings or other constructions affixed to the soil are immovable and form one property." Hearne v. Victoria Lumber Co., 131 La. 646, 60 So. 22, 23.

It is clear that by virtue of the sale by Virguerie of the land with the improvements, the purchaser, O'Shaughnessy, was immediately vested with the ownership of the residence; and the New Era Realty Company was divested thereof and lost its title thereto. As the lien of the plaintiff company rested on the residence while it remained in the ownership of the New Era Realty Company, when the sale was executed it ceased to exist; and it is certain this pre-existing lien could not have been enforced against O'Shaughnessy, as he was not required or expected to look for a lien or other incumbrance resting on a house belonging to the New Era Realty Company with which he was not concerned in buying the property from Mr. Virguerie. And as a matter of fact, never knew of the existence of such a lien either from the public records or dehors the record.

This sale from Virguerie to O'Shaughnessy was passed May 22, 1930, prior to the issuance of the policies by defendant insurance companies and long before the residence was destroyed by fire.

■ "Property insurance is essentially and entirely a contract of indemnity. Hence, an interest for the loss for which the contract provides indemnity is an absolute essential to the valid existence of the Contract." Vance on Insurance, p. 125; Joyce on Insurance, § 889.

In the case of Marcuse v. Upton et al., 9 La. App. 28, 118 So. 790, the court held that the insured should have an interest in the property insured "at the time of making the contract and at the time of the loss."

■ Evidently, to give validity to the contract, the insured should have an insurable interest, at its inception, and at the time he suffers the loss. The essential purpose of such a contract is to indemnify the assured for the loss he may sustain.

■ In this case, the only insurable interest the plaintiff had was the lien it had on the residence in question. This lien, as we have

explained, had ceased to exist and had disappeared on May 22, 1930, when the land, with improvements, was sold to O'Shaughnessy. Thereafter when plaintiff company took out the insurance from defendant companies, it had no lien on this residence which it could insure, and as it had no lien, it had nothing to insure against loss. Obviously, when the residence was destroyed plaintiff company sustained no injury or loss; hence, there was nothing defendant companies could have indemnified.

If the defendant insurance companies had known that the land and residence had been sold prior to the issuing of the policies, it might be said that thus having the knowledge of the real facts concerning the title to the house, they could not set up the plea of noncompliance within the requirements of the policies, as to such title or ownership. If the defendant insurance companies had been apprized of such a fact, they would have known that the ownership of the residence had passed to the purchaser, O'Shaughnessy, and with the divestiture of title in the New Era Realty Company that plaintiff company had lost its lien, and therefore had nothing to insure. Evidently, these companies had no such knowledge. They could not have been bound by knowledge of ownership or title in plaintiff company, the insured, because when plaintiff was insured, it had no title whatsoever to the residence. Nor did plaintiff company possess such information.

Evidently, both insurer and insured were acting under the honest belief that plaintiff had an insurable interest in the lien it claimed on the building, about which they were mistaken. This error could not create a lien or insurable interest which was essential to support the contracts of insurance. When the policies were issued plaintiff had nothing to insure and suffered no loss as a result of the fire which destroyed the residence; hence, there was nothing to indemnify for which defendants were obligated under the policies. The only obligation that rested upon defendants was to return the premiums paid by plaintiff, which, we understand, were tendered by defendants.

The judgments below in favor of plaintiff on the policies with damages and attorney's fees in the above-entitled cases must be reversed.

This opinion and judgment are rendered in the case of the plaintiff company against the insurance company of North America et al. as the opinion below was rendered in that case.

Judgments and decrees reversing the lower court in the two other cases will likewise be entered separately, as separate judgments were rendered in these two cases in favor of plaintiff, also for statutory damages, legal interest, and attorney's fees.

It is therefore ordered, adjudged, and decreed that the judgment in favor of plaintiff company in its suit against the insurance company of North America, with damages, legal interest, and attorney's fees, be and is hereby annulled, avoided, and reversed; that the plaintiff's demand therein be and is hereby rejected at its cost in both courts.

ELLIOTT, Judge (dissenting).

The fundamental question in this case is whether Davis-Wood Lumber Company, Inc., at the time of the insurance and at the time of the fire, had an insurable interest in a certain dwelling house, etc., described in the petition. The record shows that Viguerie owned and possessed a small tract of land, surveyed and platted by Pugh, surveyor, and which may be called the superior title. The limits of the Viguerie tract conflict with, overlapping the limits of another small, adjoining tract, belonging to New Era Realty Company, as surveyed and platted by Barrow, surveyor, and which may be called the junior title. The limits overlap to the extent of 1.80 acres, but the owners of the respective plots of land were not aware of the conflict and did not learn that any existed until after New Era Realty Company had erected a tenement, consisting of dwelling, outhouses, yard fence, supposing the tenement, dwelling, etc., to be on its own land.

New Era Realty Company erected the buildings in good faith. Davis-Woods Lumber Company, Inc., furnished New Era Realty Company with the lumber and building material used in the erection of the dwelling and other improvements mentioned. Davis-Wood Lumber Company, Inc., supposed that the buildings and improvements for the erection of which it furnished the lumber and material were being erected on the land belonging to New Era Realty Company. The building and improvements were in fact erected within the limits thereof as located and designated by the Barrow survey. The title to the land on which the dwelling, etc., were erected stood on record in the Conveyance Book in the name of New Era Realty Company.

Davis-Wood Lumber Company, Inc., to

protect their privilege, as furnisher of materials, caused proper registry to be made of its account in the Mortgage Book and afterwards brought suit against New Era Realty Company on account, praying for recognition of its privilege on the buildings and land on which they were situated, recovered judgment as prayed for, and caused its judgment to be recorded in the Mortgage Book, creating a judicial mortgage against the property.

Under the law, Civil Code, art. 508, a building erected in good faith on land called for by the title of the owner, duly recorded in the Conveyance Book, and within its established limits, belongs to the owner of the land on which the dwelling was supposed to be erected. The erection thus made served to oust the constructive possession of Viguerie, arising from his superior title, and vested actual possession in New Era Realty Company to the extent of the tenements erected. John T. Moore, etc., Co. v. R. R. Co., etc., 126 La. 840, rehearing, page 888, 53 So. 22, 27, citing decisions of the Supreme Court of the United States to that effect. This ownership and possession of the building remained and continued in New Era Realty Company under the terms of the law, article 508, until the owner of the land "reimburse [the owner of the edifices] the value of the materials and the price of workmanship, or to reimburse a sum equal to the enhanced value of the soil." Article 3453 is to the same effect. Laizer v. Generes, 10 Rob. 178; Johnson v. Weinstock, 31 La. Ann. 698; Kibbe v. Campbell, 34 La. Ann. 1163; Hearne v. Victoria Lumber Co., 131 La. 646, 60 So. 22.

Davis-Wood Lumber Company, Inc., the furnisher of the lumber and material and whose account and judgment was duly and timely recorded in the Mortgage Book, had a privilege on the buildings the same as if the buildings had been actually erected on the land of New Era Realty Company. Both titles being recorded in the Conveyance Book, the registry of one was just as much notice of ownership as the registry of the other. It is not claimed that Viguerie or his successor, O'Shaughnessy, ever reimbursed or sought or desired to make the reimbursement required by article 508. The privilege of Davis-Wood Lumber Company, Inc., in such a situation existed against the buildings under the terms of Act No. 298 of 1926, § 11.

About the time of or soon after Davis-Wood Lumber Company, Inc., had registries made as stated and before anything further was done toward the enforcement of its privilege, it was discovered that the dwelling and part of the outhouses were on the Viguerie parcel of land. The good faith of O'Shaughnessy in buying and claiming the dwelling is questioned by plaintiff. O'Shaughnessy no doubt saw, before buying from Viguerie, that the tenements, dwelling, and some of the outhouses were on Viguerie's side of the boundary line, separating his tract from that of New Era Realty Company, and part of one of the outhouses was on the land of New Era Realty Company, and was thereby put on his guard. I think it reasonably sure that O'Shaughnessy knew from Viguerie, before buying, that the dwelling, etc., had been erected by New Era Realty Company.

But be that as it may, Davis-Wood Lumber Company, Inc., for the protection of their interests in the buildings procured insurance thereon from the defendants. The insurance companies were fully informed as to the title situation at the time the policies were issued. The policies were accordingly made to say: "Permission is hereby granted for the property insured hereunder to stand on leased ground or ground to which the title may be questioned." The stipulation was by accident omitted from one of the policies but the error is admitted. Consequently, plaintiff's right under the policy is the same as if no error had been committed.

The insurable interest of the plaintiff in a situation like the present is supported by Vance on Insurance, subject, Insurable Interest, chap. 4, p. 116; Ruling Case Law, vol. 14, subject, Insurance Interest in Property, § 87 et seq., p. 910 et seq.; Permanent Supplement the same; Cyclopedia of Insurance Law by Couch, vol. 2, subject, Particular Interests, Contractors, Builders, Materialmen, § 373, p. 1095; section 432, p. 1223; same author, vol. 4, subject, Title and Ownership of Property, § 941, p. 3259, from which the following is taken: "But if the insurer or its authorized agent at the time of the issuance of the policy had knowledge of the real facts as to the insured's actual interest, title or ownership, the policy is binding, since in such a case the insurer cannot set up noncompliance or non-conformity with the conditions or requirements of the policy as to such title or ownership." A note cites decisions from twenty-three states as supporting

the text. There are none from Louisiana, but the case, Bell v. Western Marine & Fire Insurance Co., 5 Rob. 423, 39 Am. Dec. 542, cited in plaintiff's brief, supports the insurable interest claimed by the plaintiff.

Viguerie previous to the insurance had sold his tract of land to O'Shaughnessy by title duly recorded in the Conveyance Book. Defendants contend that plaintiff by this sale was divested of any interest in the buildings and had none to insure under the authority of Louisiana Land & Pecan Co. v. Gulf Lumber Co., 134 La. 784, 64 So. 713; McDuffie v. Walker, 125 La. 152, 51 So. 100; John T. Moore, etc., v. R. R. Co., etc., 126 La. 840, 53 So. 22; Webster, etc., v. R. R. Co., 129 La. 1098, 57 So. 529; Soniat v. Whitmer, 141 La. 235, 74 So. 916; Westwego, etc., v. Pizanie, 174 La. 1068, 142 So. 691. But I do not think these cases applicable to the question in hand. The fundamental question involved in the cases relied on by defendants was one of ownership as affected by our laws on the subject of registry of titles.

In this case the fundamental question is one of insurable interest in a dwelling, erected and situated as stated. The title to the land on which the building stood at the time of the insurance and at the time of the fire stood on record in the Conveyance Book in the name of New Era Realty Company. This record so far as concerns notice of title was just as effective in every way as the registry of the Viguerie title and of that from Viguerie to O'Shaughnessy, Davis-Wood Lumber Company, Inc., have as much right to rely for the protection of its interest on the registry in the conveyance book of the New Era Realty Company title, as have the defendants to urge the registry in the conveyance book of the Viguerie title and of that from Viguerie to O'Shaughnessy. As stated one registry is as effective for every purpose as the other. Defendants understood and recognized the situation and plaintiff's equity and right in and to the buildings and intentionally insured that interest against loss by fire. A fire having occurred, they now urge as a defense against payment of the loss, an error committed in a way not explained except that it was not, by the plaintiff either in the description of the New Era Realty Company plot of ground or by Barrow surveyor in locating it, a risk set out in the policies and accepted by defendants.

I think the judgment appealed from correct in each case, and that same should be affirmed.