131 So.2d 240 (1961)
Lillian A. RUBE
v.
PACIFIC INSURANCE COMPANY OF NEW YORK.
No. 5345.
Court of Appeal of Louisiana, First Circuit.
May 22, 1961.
Rehearing Denied June 30, 1961.
*241 Cobb & Brewer, Baton Rouge, for appellant.
Kantrow, Spaht, West & Kleinpeter, Sanders, Miller, Downing, Rubin & Kean, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, JONES, HERGET and LANDRY, JJ.
LANDRY, Judge.
In this action plaintiff Lillian A. Rube seeks recovery of the sum of $750 allegedly due for damages to a 1956 Plymouth automobile insured against physical damage pursuant to a policy issued by defendant Pacific *242 Insurance Company of New York designating plaintiff as the named insured, plaintiff conceding the fact the insured vehicle is the property of her brother, Willie Rube.
The contending parties are in substantial agreement concerning most of the facts involved in this litigationthe principal dispute being with respect to certain telephone conversations which transpired between plaintiff and a Mrs. Zimmer as will hereinafter be shown.
Plaintiff, an employee of E. J. Gonzales Finance Company, secured a loan from her employer for her brother Willie Rube (a member of the United States Armed Forces, more specifically the United States Navy), the proceeds of which loan said borrower employed to purchase the Plymouth automobile in his own name, the purchase thereof being made on December 6, 1958. On the date of purchase Willie Rube executed a chattel mortgage and promissory note covering the vehicle in favor of the E. J. Gonzales Finance Company as security for the loan advanced by said concern. Plaintiff concedes she neither signed nor endorsed either the note or chattel mortgage given the finance company by her brother. Plaintiff does contend, however, that, as an inducement to her employer to make the loan, she verbally promised and agreed to pay the amount of the note in the event her brother failed to do so.
December 6, 1958, being a Saturday, and plaintiff's employer requiring that the automobile be insured against physical damage, plaintiff telephoned the insurance office of Gully and Poor, spoke with a Mr. Gully relative to insuring the vehicle against collision damage and was informed by Gully the office was closed because it was Saturday but that he, Gully, would "bind the risk" until the Monday following on which date an employee of his firm would contact plaintiff and complete the transaction.
On the ensuing Monday, plaintiff, having failed to hear from Gully and Poor with respect to the insurance, telephoned said concern and spoke with its Mrs. Zimmer regarding the desired insurance. Plaintiff informed Mrs. Zimmer that plaintiff was not the owner of the automobile sought to be insured and that the vehicle in truth and in fact belonged to plaintiff's brother who was a member of the armed forces stationed in Pensacola, Florida.
According to plaintiff, after advising Mrs. Zimmer the car belonged to her brother who was in the Navy, Mrs. Zimmer informed plaintiff the insurance could not be written in the name of any person who was a member of the armed forces and suggested the policy be written in plaintiff's name instead. To said proposal and procedure plaintiff readily assented stating in effect it was immaterial to her how the policy was written so long as plaintiff was protected.
Mrs. Zimmer testified, in substance, that she informed plaintiff the insurance could not be placed in the name of plaintiff's brother and could only be written if title to the car were placed in plaintiff's name whereupon plaintiff intimated she would transfer registry of the vehicle to reflect plaintiff's ownership thereof. In essence Mrs. Zimmer further testified that proceeding on the assumption title to the vehicle would be conveyed to plaintiff, the requested policy was placed in defendant company with plaintiff designated therein as the named insured and owner of the automobile. On December 17, 1958, eleven days after plaintiff's initial call to Gully and Poor, the insured vehicle was involved in an accident in the State of Florida and totally demolished.
In the pleadings filed herein by plaintiff she specifically acknowledged her verbal promise to pay the debt owed by her brother, Willie, to the chattel mortgagee, E. J. Gonzales Finance Company.
The learned trial court rendered judgment in favor of plaintiff in the sum of $750 representing the value of the vehicle ($850) less the sum of $100 deductible under the policy provisions but rejected plaintiff's *243 demands for penalties and attorney's fees.
Defendant insurer has appealed the judgment of the trial court contending said tribunal erred (1) in holding plaintiff's verbal promise to pay her brother's debt gave rise to an insurable interest in the vehicle and (2) failing to sustain the alternative defense of fraud and deceit in the procurement of the policy in suit. Plaintiff has also appealed alleging error on the part of the trial court in rejecting her demand for penalties and attorney's fees.
The general rule that a person obtaining or securing a policy of insurance must possess an insurable interest in the subject matter of the insurance otherwise the policy is void, is the expressly declared legislative policy of this state as evidenced by the provisions of the Louisiana Insurance Code, as amended and reenacted by Act 125 of 1958, more particularly LSA-R.S. 22:614, subds. A and B, which read in full as follows:
"A. No contract of insurance on property or of any interest therein or arising therefrom shall be enforceable except for the benefit of persons having an insurable interest in the things insured.
"B. `Insurable interest' as used in this Section means any lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage." Amended and reenacted Acts 1958, No. 125."
"Insurable interest" as thus defined by our state legislature is consistent with the universally recognized rule to the effect a policy of insurance on property is predominately a contract of indemnity the purpose of which is to protect the assured against any loss he may sustain by virtue of its loss, damage or destruction. The great weight of authority further recognizes and holds that an interest in the property protected is essential to the existence of a valid insuring agreement and additionally serves to differentiate an enforceable indemnity agreement from a wagering pact which latter transaction is invalid and unenforceable for reasons obviously prompted by public policy and good morals. It is also generally recognized and held the interest of the insured sought to be protected must have for its object the obviation of pecuniary or financial loss to or liability of the assured which would otherwise result from damage to or destruction of the insured property. If the loss or damage to the insured property does not expose the insured to either direct, immediate or potential loss or liability, the insured is without insurable interest therein.
Plaintiff herein readily concedes she is neither the owner of the insured vehicle nor does she hold a lien or privilege thereon. She contends, however, she is possessed of an insurable interest therein on the ground she was a negotiorum gestor, trustee or agent of her owner-brother by virtue of her verbal promise to pay the debt owed by her brother to plaintiff's employer and her subsequent judicial admission and acknowledgment of said obligation in the sworn allegations of the supplemental and amended petition filed herein on her behalf on August 6, 1959. Stated otherwise plaintiff maintains that her verbal promise to pay the debt and subsequent judicial admission thereof renders said obligation legally enforceable subjecting her to liability to the finance company thereby conferring upon her an economic interest in the mortgaged automobile sufficient to support and sustain an insurable interest therein.
Learned counsel for defendant argues that plaintiff has no insurable interest in the subject property considering plaintiff has no lien, mortgage or privilege thereon and under Article 2278, LSA-C.C. a verbal promise to pay the debt of a third person is unenforceable and parol evidence is inadmissible in proof thereof. Defendant further contends that, assuming arguendo, plaintiff's judicial admission of such promise *244 rendered same enforceable it nevertheless is of no efficacy herein inasmuch as it establishes an insurable interest subsequent to the destruction of the insured property whereas a valid insurable interest must exist not only at the time the policy is written but also at the time the loss occurs.
No citation of authority is deemed necessary in support of the principle that a general creditor has no insurable interest in any property of his debtor. Unquestionably the jurisprudence of this state holds to the effect that an interest necessary to sustain an insurable interest must consist of an interest in the property specifically designated as the subject of the insurance contract in question. Thus in Bell v. Western Marine and Fire Insurance Co., 5 Rob. 423, it was held a mortgagee or creditor holding a lien on property has an insurable interest therein. In Davis-Wood Lumber Company, Inc. v. Insurance Company of North America, La.App., 154 So. 760, it was held an insurable interest must exist not only at the time the policy is written but also at the time of loss. More precisely, it was held in the Davis-Wood Lumber Company case, supra, that the holder of a valid lien against improvements, cancelled by transfer of the realty upon which the improvements were situated, could not recover the proceeds of a policy insuring the improvements where such policy was issued and the loss occurred subsequent to the transfer which annulled the lien.
Plaintiff's attempt to establish an insurable interest predicated upon her being a negotiorum gestor, agent or trustee of her brother is without foundation in the record. This contention may be disposed of by pointing out that plaintiff does not assert title to the car, was never in possession thereof and the record is barren of evidence indicating any responsibility on her part for its safety or preservation.
As previously stated the trial court concluded plaintiff possessed an insurable interest in the vehicle because her oral promise to pay her brother's debt and her subsequent judicial admission thereof rendered such promise enforceable and subjected plaintiff to liability for the obligation.
The question thus presented, namely, whether a surety possesses an insurable interest in the property of the principal debtor whose obligation he assumes, is apparently res nova in this state considering no controlling precedent in our own jurisprudence has been cited by counsel for either litigant and our own research fails to disclose the existence of any such authority.
The general rule obtaining in other jurisdictions, however, is stated as follows in Volume 29 Am.Jur. Verbo, Insurance, Section 322, Page 294:
"What is more, an insurable interest in property does not necessarily imply a property interest in, or a lien upon, or possession of the subject matter of the insurance, and neither the title nor a beneficial interest is requisite to the existence of such an interest; it is sufficient that the insured is so situated with reference to the property that he would be liable to loss should it be injured or destroyed by the peril against which it is insured. For instance, although a person has no title, legal or equitable, in the property, and neither possession nor right to possession, yet he has an insurable interest therein if it is primarily charged in either law or equity with a debt or obligation for which he is secondarily liable." 29 Am. Jur. 294, verbo Insurance, §322.
The rationale of the foregoing rule is that although a party be neither an owner nor part owner of property he nevertheless has an insurable interest therein if the property is burdened with a debt or charge for which he is secondarily liable and the loss of or damage thereto, occasioned by the hazard against which it is insured, subjects or exposes him to financial, pecuniary or economic loss, hazard, risk or liability.
Consequently, unless plaintiff's oral promise to pay the debt and her subsequent judicial *245 acknowledgment and admission thereof legally binds her to discharge the obligation, plaintiff has no insurable interest in the subject matter of this law suit.
In this connection we note Article 2278, LSA-C.C. provides as follows:
"Article 2278. Parol evidence shall not be received: * * *
"(3) To prove any promise to pay the debt of a third person."
In conformity with the foregoing codal authority, the courts of this state have repeatedly held parol evidence inadmissible to prove a promise to pay an obligation of a third party. Hartmann v. Ebeyer, 18 La. App. 467, 138 So. 915; Schneider v. Ruf, La.App., 176 So. 402; B. & B. System v. Everett, La.App., 34 So.2d 521; Litton v. Parker, La.App., 106 So.2d 776; Magee v. Crowe, La.App., 111 So.2d 552. The only exception to the foregoing rule are those instances wherein the oral promise to pay is prompted by pecuniary or business motivation on the part of the promisor. B. & B. System v. Everett, supra, Fuselier v. Hudson, La.App., 93 So.2d 266.
The reason for the rule and the exception thereto are set forth in Hornsby v. Rives, La.App., 2 So.2d 532, 534, as follows:
"In this case as well as in all others of like or similar facts, the primary question to determine is whether the obligation of the defendant is a collateral one, that is, one of suretyship. If so, parol testimony is incompetent to prove the agreement out of which such a relation arose. On the other hand, if the promissor has bound himself as principal with the person to whom credit is extended, the rule is different. The obligation then is independent and primary. The fact that both parties are responsible for the debt does not alter the situation so far as primary responsibility to the creditor is concerned. The leading case on this subject is Watson Brothers v. Jones, 125 La. 249, 51 So. 187, wherein the court said:
"`There can be no objection to one's contracting to pay for goods to be delivered, whether to the obligor, or to a third person, and the obligation resulting from such a contract may be none the less a debt of the obligor because the third person, to whom the goods are delivered, also becomes bound for the price. If the condition of the contract is that the obligor is to pay for the goods only in the event that the person to whom they are to be delivered does not, then the latter is to be regarded as the principal debtor, and the contract is a collateral one, of suretyship, in which the obligor would be regarded as binding himself for the debt of another, and which could not be proved by parol evidence. Graves v. Scott & Baer, 23 La.Ann. (690), 692; Levy & Dieter v. Dubois, Lowe & Foley, 24 La.Ann. 398.'
"In National Materials Company v. Guest, La.App., 147 So. 771, the court, as reflected from the syllabus, held:
"`Though parol evidence is inadmissible to establish promise to pay debt of third person, it is admissible to establish absolute primary obligation to pay for goods delivered to third person (Civ.Code, art. 2278, par. 3)."
That plaintiff possessed no pecuniary or economic interest in the vehicle is clearly shown by the evidence. Plaintiff readily concedes she advanced no funds to her brother and her own testimony indicates beyond question her asserted promise to pay the debt was in the capacity of surety only, thus creating only collateral or secondary liability which may not be established by parol evidence. Her testimony is clearly to the effect that she did not assume primary liability for the debt but only agreed to be responsible therefor in the event her brother did not discharge it pursuant to the terms of his agreement.
*246 As stated in earlier jurisprudence, Article 2278 of our LSA-Civil Code corresponds to the statute of frauds of the common-law states and rests upon obvious considerations of public policy. Wallenburg v. Kerry, 16 La.App. 221, 133 So. 823.
Learned counsel for plaintiff ingeniously argues Article 2278 and the jurisprudence interpretative thereof does not hold a verbal promise to pay the debt of a third party is void and unenforceable but that it may not be established by parol evidence. Learned counsel further reasons that such promises are not void and if admitted become enforceable, particularly when the promise is judicially admitted or acknowledged.
The whole tenor of the jurisprudence on the subject indicates that such promises are unenforceable and create no obligation whatsoever on the part of the promisor either collateral, secondary or otherwise, when the sole and only proof thereof is parol testimony. The obvious reason for the rule is that such testimony is easily fabricated but difficult to disprove. Such an oral promise, therefore, standing alone is utterly unenforceable until proven by competent evidence. Until admissible proof is forthcoming the alleged promisor is without liability either primary or secondary.
Christo v. Eagle Star Insurance Company, Ltd., 232 La. 28, 93 So.2d 682, so heavily relied upon by both learned counsel for plaintiff and the esteemed trial court is clearly distinguishable on its facts and consequently neither apposite nor decisive of the case at bar. In the Christo case the plaintiff-insured, Christo, purchased the insured vehicle in his own name and executed a chattel mortgage and promissory note covering same despite the fact the automobile in truth and in fact belonged to his cousin, one Lee Jackson, and was placed in plaintiff's name solely as an accommodation to Jackson. Christo having signed a note and chattel mortgage covering the vehicle was solely primarily liable thereon to the holder thereof. Christo was the only person primarily responsible for amortization of the loan secured by the chattel mortgage he had granted. Under such circumstances he clearly possessed an insurable interest in the automobile considering its destruction would have resulted in his pecuniary loss. In the case at bar plaintiff did not sign or endorse the note or chattel mortgage, she had no title to the car, held no lien thereon or claim thereto and, at the time of issuance of the policy as well as at the time of loss, was under neither primary nor secondary obligation to discharge the chattel mortgage with which the vehicle was burdened.
Assuming, solely for argument's sake, plaintiff's subsequent confirmation of her prior oral promise to pay the debt, by judicial acknowledgment thereof under date of August 6, 1959, validated and rendered said promise enforceable, bound plaintiff to pay the debt and consequently vested an insurable interest in her, it nevertheless came too late considering the loss had previously occurred.
To be enforceable an insurable interest must exist not only at the time the policy is written but also at the time the loss occurs. Davis-Wood Lumber Company v. Insurance Company of North American, La.App., 154 So. 760, 44 C.J.S. Verbo, Insurance §175c, p. 871.
In offset of the tendered defenses of lack of insurable interest and alleged fraud, mistake and deceit in the procurement of the policy, plaintiff urges in brief a plea of estoppel. The plea is founded upon the general rule of law obtaining in this state to the effect that ordinarily a principal is charged with the knowledge of his agent and therefore defendant is charged with and bound by the complete disclosure to Mrs. Zimmer who nevertheless issued the policy in plaintiff's name. Learned counsel for defendant most ardently urges plaintiff's plea of estoppel is not entitled to consideration inasmuch as it was not specifically set forth in plaintiff's pleadings.
*247 Admittedly a plea of estoppel relied upon by a defendant as an affirmative defense must be specially pleaded. Harvey v. Richard, 200 La. 97, 7 So.2d 674; Coco v. Nolin, La.App., 56 So.2d 204; Arkansas Louisiana Gas Co. v. Thompson, 222 La. 868, 64 So.2d 202. It is equally well settled, however, that a plaintiff in an action may urge a plea of estoppel in nullification of proffered defense even though no estoppel was especially plead. The rationale of the latter jurisprudence is predicated upon the procedural rules of this state which admit of no replication by plaintiff and assumes plaintiff's denial of all defenses raised in defendant's answer. Warren v. Police Jury of Washington Parish, La.App., 12 So.2d 643; Sanders DeHart v. Continental Land & Fur Co., 205 La. 569, 17 So.2d 827; Galiano v. Galiano, 213 La. 332, 34 So.2d 881.
Unfortunately, however, the doctrine of estoppel is unavailable to plaintiff herein because of the provisions of the Louisiana Insurance Code, more precisely LSA-R.S. 22:614, subd. A (hereinabove set forth in full) which states in clear, unmistakable and unambiguous language that no contract of insurance on property shall be enforceable except for the benefit of persons having an insurable interest in the thing insured. This particular statute has existed in its present form since its initial enactment in 1948, and is obviously a condification of the general rule set forth in Vol. 45 C.J.S. Verbo, Insurance §674(a), p. 614, as follows:
"An insurance company may waive, or be estopped to assert, any provision inserted in the contract or policy for its benefit, unless such result is violative of statute or public policy. Waiver or estoppel cannot operate to create a contract, or, as a general rule, to impose a risk or liability excluded from the coverage of the policy.
"As a general rule, and in the absence of statutory inhibition, the company may waive, or be estopped to rely on, any ground on which it might be entitled to avoid the policy or dispute its liability thereunder, including grounds based on representations, warranties, or conditions. This rule applies particularly to provisions inserted in the contract for the benefit of the company even where the policy, according to its express terms, is under the circumstances to be void. However, the doctrine of waiver cannot operate to make valid a contract in contravention of public policy, as where there is a lack of an insurable interest; and waiver or estoppel cannot accomplish a result prohibited by statute.
We have been cited no case in our own jurisprudence, decided subsequent to adoption of the Louisiana Insurance Code, wherein a plea of estoppel was urged by an assured without insurable interest. Moreover, our own independent research discloses no decision, rendered since the adoption of the Louisiana Insurance Code, passing upon the merits of a plea of estoppel presented on behalf of an insured who lacked an insurable interest.
Being called upon to determine the effect of LSA-R.S. 22:614, subd. A, as a matter of first impression, we interpret the language employed therein, namely, "No contract of insurance on property * * * shall be enforceable except for the benefit of persons having an insurable interest in the things insured." to mean that as a matter of public policy the legislature of this state has reprobated such contracts, stamped same with the seal of nullity and declared agreements of this character void and unenforceable on any theory or basis, estoppel included. The statute expressly provides that a person without insurable interest has no enforceable rights under any insurance contract. To permit enforcement of such rights on any ground is but to contravene the letter and intent of the statute as well as sanction a result specifically proscribed therein.
*248 The views herein expressed obviate the necessity of considering defendant's alternative defense of fraud, mistake and deceit in securing the issuance of the policy in question.
Plaintiff having no insurable interest in the destroyed vehicle was erroneously granted recovery by the learned trial court.
Accordingly, the judgment of the trial court is hereby reversed and judgment rendered herein in favor of defendant, Pacific Insurance Company of New York, and against plaintiff, Lillian A. Rube, dismissing said plaintiff's demands at plaintiff's cost.
Reversed.