SAMUEL, Judge.
Plaintiff, Lurry D. Lacour, filed a posses-sory action against defendant, Alvin B. Crais, alleging the continued existence in the Jefferson Parish conveyance records of a sale by Ford Investment Corporation to defendant of five lots of ground in Kenner, Louisiana constituted a disturbance in law of plaintiff’s possession of the property. The lots in suit are designated as Nos. 44, 45, 46, 47 and 48 of Square No. 40 in Highway Park Subdivision, Kenner, Louisiana. Defendant answered, denied plaintiff’s allegations, and reconvened alleging 10 year acquisitive prescription in his favor and praying for judgment declaring him the actual and legal owner of the property in question. Plaintiff answered the reconven-tional demand and affirmatively asserted res judicata and judicial estoppel.
After a trial on the merits, judgment was rendered overruling Lacour’s exceptions but nevertheless declaring him the owner of the property. From that judgment, defendant appealed.[1]
In 1954 plaintiff and George D. Williams acquired from Pierre Laroux certain immovable property, including the lots in suit, in Highway Park Subdivision, Kenner, Louisiana. On August 7, 1956 plaintiff and Williams sold this property by act of credit sale to Ford Investment Corporation. The consideration for the sale was $10,000 cash, together with a promissory note for $40,000 secured by mortgage on the property. The note was held by plaintiff.
In March, 1957 representatives of Ford Investment Corporation asked plaintiff to execute a partial release of mortgage covering some of the lots (including the lots in suit) secured by the $40,000 mortgage. The stated purpose for the partial release was to allow Ford Investment Corporation to sell those lots to a third person.
At the appointed time, plaintiff appeared before a notary and two witnesses and executed, in triplicate, that partial release of mortgage. The alleged purchaser did not appear for the closing and plaintiff departed from the office where the closing was to take place to attend another meeting. Plaintiff left the executed releases in the possession of an officer of Ford Investment Corporation. Before leaving the area, he telephoned the office and was advised the purchasers had not yet arrived. Plaintiff did not then go to the office and retrieve the executed partial releases.
Later, plaintiff contacted Ford’s officer regarding the passage of the act of sale, and eventually requested return of his partial release. Approximately one week after the release was executed, one of Ford’s representatives delivered to plaintiff a sealed envelope, which plaintiff believed contained the three executed copies of the partial release of mortgage. Plaintiff did not open the envelope, but instead placed it in his safe. He stated he assumed the proposed sale had never taken place, since he did not receive any compensation for executing the act of partial release and did not present Ford’s promissory note to be paraphed for identification therewith.
On April 3,1957, Ford Investment Corporation sold the property in suit to defendant by act of credit sale before the same notary who had passed the act of partial release. Plaintiff had no knowledge of this sale. On May 23,1958, Ford also sold the other lots it had acquired from plaintiff and Williams (other than the property now in dispute) to American Cigarette Service. That sale was passed by one of Ford’s corporate officers. The certificates attached to this sale did not show plaintiff’s mortgage because shortly before the certificates were dated the partial mortgage release was filed with the Clerk of Court evidencing plaintiff’s release of his mortgage on the lots sold to American Cigarette Service and the lots in suit.
Several months after plaintiff received the envelope purportedly containing his partial release, he discovered construction in progress on lots he and Williams had sold *1206 to Ford on which he had not executed a release. Examination of the public records by his attorney revealed his mortgage had been cancelled in part.
On January 3, 1961, plaintiff filed a petition for executory process against Ford Investment Corporation, seeking to foreclose on the mortgage securing the promissory note given him as partial consideration for the sale to Ford. An order directing the issuance of executory process was signed by the court, and a notice of seizure was recorded in the public records of Jefferson Parish on July 17, 1961. Subsequently, plaintiff obtained court authority to annex to the original petition for executory process the resolution of the board of directors of Ford Investment Corporation authorizing the mortgage sought to be foreclosed. Plaintiff also obtained court permission to serve notice of demand and seizure on the Secretary of State because service could not be made on Ford’s registered agents and the whereabouts of that corporation and its officers were otherwise unknown.
Plaintiff’s attorneys advised the court they would not sell any of the property subject to the order of executory process until all interested parties had an opportunity to intervene and be heard. Subsequently, numerous interventions were filed in the foreclosure proceeding by various persons. Some intervenors alleged plaintiff’s mortgage had been cancelled and extinguished as to the property owned by them, and others alleged the property was subject to their own mortgages.
In addition, the trial judge determined certain property owners whose title would be affected by plaintiff’s foreclosure proceeding had not appeared to assert their rights in the property and, accordingly, he appointed an attorney to represent their interests as curator ad hoc. The curator filed a petition of intervention on behalf of all owners whose property might be subject to the plaintiff’s vendor’s lien and mortgage except those property owners who otherwise appeared in person or through counsel. The curator attached to his intervention, as an exhibit, a list of the names of the various owners who appeared to own property subject to the foreclosure proceeding, together with the acquisition date for each such owner. Defendant and his acquisition were listed in this exhibit. Plaintiff did not furnish defendant’s address to the curator because, while he had previously met defendant, defendant’s whereabouts were unknown to him. Moreover, defendant was not listed in the telephone directory for either Orleans or Jefferson Parishes.
On August 31, 1963, a hearing was held to determine whether injunctive relief should be granted intervenors. During the course of this proceeding plaintiff agreed to amend his pleading in return for certain consideration, and to dismiss the foreclosure as to those lots on which a claim had been asserted by intervenors. During this same proceeding the curator advised the court the property at issue in this proceeding was still affected by the executory process and further stated he did not know the whereabouts or existence of Mr. “Craig”. On January 25, 1965, another hearing was held on the claims asserted by intervention not previously compromised. In due course, the court ruled in favor of the intervenors, and plaintiff appealed to this court.
This court reversed the trial judge’s decision and, only as to lots fraudulently added to the release after its execution, held persons purchasing immovable property on which a mortgage had been fraudulently released were not entitled to rely on the public records.[2] The Supreme Court granted writs but the matter was compromised.
On April 29, 1969 plaintiff filed a supplemental petition seeking executory process on the lots which had not been affected by compromise. A judicial sale of the lots in suit, together with other lots, was ordered and a notice of seizure was issued and recorded in the public records. A judicial advertisement of the property sold pursuant to the court’s order was published in the official parish journal on March 2, 1972 and April 6,1972. Plaintiff purchased the property at the judicial sale, and the sheriff’s deed to plaintiff was recorded.
*1207 Plaintiff then filed this suit against defendant to have the recordation of his acquisition from Ford Investment Corporation cancelled from the public records.
The parties devote substantial argument to the question of the burden of proof in this case. Plaintiff’s petition was framed in the language of a possessory action, but defendant’s reconventional demand prayed for judgment declaring him the actual and legal owner of the property. The codal rule is that if a defendant in a possessory action asserts title in himself, in the alternative or otherwise, he converts the suit into a petito-ry action and judicially confesses the possession of the plaintiff in the possessory action.[3] The district court concluded that Crais’ answer, which included a claim of ownership by 10 years acquisitive prescription, converted the action into a petitory action, thereby confessing the possession of Lacour. Under Article 3653(1) of the Code of Civil Procedure the plaintiff in the peti-tory action must make out his title against a defendant in possession of the property, and it is not sufficient for him merely to prove “a better title” to the property than that held by the defendant in the petitory action. The trial court concluded that, while defendant confessed plaintiff’s possession in the reconventional demand, nevertheless, the confession had been revoked or superceded by mutual agreement because the parties stipulated that neither had assumed actual physical or corporeal possession of the property. The result of the trial court’s finding is that defendant only had to prove “a better title” than that of the plaintiff. Even though the trial court held in favor of plaintiff, plaintiff takes strenuous issue with the trial court’s finding on the basis that a judicial confession is “full proof” against the party who makes it and that defendant’s attorney did not introduce into evidence the stipulation upon which the trial court relied. We hold, irrespective of any conclusion regarding this finding by the trial court, that defendant made out his title to the property.
The validity of defendant’s title ultimately hinges on the legal effect of the release of mortgage executed by plaintiff and later altered without his consent. This document without question originally was intended to release the particular lots later purchased by defendant. Its legal effect is contested by plaintiff because (1) the alteration of the document by addition of other lots rendered the entire release null and void, even as to the lots which he intended to release, and (2) he received no consideration for it. Plaintiff further contends the nullity of the release of mortgage resulted in defendant holding as a “third possessor” who took the property “subject to” his mortgage, and the foreclosure by executory process was sufficient to terminate all rights of defendant in the property.
Plaintiff’s first attack on the partial release of mortgage is futile. He relies primarily on the Supreme Court’s opinion on rehearing in American Guaranty Co. v. Sunset Realty & Planting Co.[4] to support his argument that the entire partial release was rendered null, even as it affected the lots plaintiff actually intended to release, by its subsequent alteration to include lots he did not intend to release.
In American Guaranty a deed was approved by a corporation’s board of directors, but between the time of approval and its signature by corporate officers, both the deed and the minutes of the directors’ meeting were fraudulently altered by the addition of an unauthorized clause. Testimony not considered by the court was introduced to prove which parts of the altered document were identical to the original and which parts were added through fraud. The court declared the entire document null, and declined to recognize the argument that only the altered portions were invalid. In so holding, the court distinguished Munn v. Hoyt,[5] and McGinty v. McGinty[6] which gave effect to valid portions of altered documents, because they involved fraudulent alterations of an origi *1208 nal document after it was executed. The document in these cases was not destroyed, and the evidence of the parties’ actual intent was not put out of existence, thereby requiring resort to unreliable testimony to establish the true intent of the parties. In Munn, the court enforced a mineral lease on a tract actually leased but refused to enforce the lease on acreage later added to it. In McGinty, a deed was declared null only as to an extra 110 acres fraudulently added to it.
The case before us presents the operative facts of the Munn-McGinty line. The original document is in existence and was altered only after it was signed. No doubt exists concerning what was consented to or what was actually done by the release before the alteration. There is consequently no reason to destroy the legal effect of the known will of the parties, and we conclude the partial release is valid insofar as it affects the lots actually released.[7]
With regard to plaintiff’s second argument, the record is somewhat vague as to when the partial release was recorded. From the stipulations in the record it appears the release was displayed to defendant at the time of his purchase and it was not actually placed in the mortgage records until May, 1978 in connection with another sale by Ford to a separate purchaser. However, the exact time the release was recorded is not material to defendant’s rights thereunder because he acted reasonably and in good faith in believing it was or would shortly bé part of the public records and because it was in fact made part of the public records before any attack on his title was made by plaintiff or anyone else.
The Louisiana public records doctrine provides that third persons dealing with immovable property may rely on the face of the public records and need not go beyond or behind those records to ascertain the validity of the title which they acquire.[8] While jurisprudence indicates the public records doctrine might not protect a purchaser from dispossession when his ancestor in title acquired by fraud,[9] mere equity by the prior owners of the property not of record when the purchaser acquires on the strength of the public records does not affect the purchaser’s ownership rights.[10]
 Defendant was clearly entitled to rely on the public records showing the existence of only plaintiff’s mortgage bearing against the property he purchased. He was likewise entitled to rely on the partial release of that mortgage on the very lots purchased by him. The closing notary was able to display the partial release to defendant because, of plaintiff’s own inaction in not opening the envelope purportedly containing all multiple originals of the release to verify their presence. By failing to retrieve the multiple originals for which he received no consideration, plaintiff made possible Ford’s use of the document which on its face and before alteration had shown plaintiff had released, for consideration, the actual lots purchased by defendant. Plaintiff is unable to attack the sale from Ford to defendant free of his mortgage because of his own negligence and because of the strength of the public records doctrine. Defendant has the same rights as if the partial release had been recorded simultaneously with the registration of the act of sale by which he acquired the lots in suit.
Having concluded defendant acquired valid title from Ford Investment Corporation to property free from plaintiff’s mortgage, the sole remaining issue is whether defendant’s title was taken from him by plaintiff’s foreclosure by executory process. Plaintiff contends defendant was merely a *1209 third possessor who took subject to his mortgage and whose title was destroyed by the sheriff’s deed adjudicating the property to plaintiff when sold under his writ of seizure and sale.
A third possessor is one who (1) acquires property (2) subject to a mortgage (3) without binding himself personally for its satisfaction.[11] A mortgage may be enforced against property so owned by such person by executory process without making him a party to the proceeding.[12] The previous discussion in this opinion reveals, however, that defendant was not a third possessor under plaintiff’s mortgage from Ford because a release of plaintiff’s mortgage, as it affected the lots acquired by defendant, was in the public records at the time plaintiff foreclosed by executory process. Defendant did not on the face of the records acquire subject to plaintiff’s mortgage and defendant could not then, and cannot now, be classified as a third possessor. Because defendant was not a third possessor, he was at a minimum entitled to be made a party to the executory process proceeding.[13] Since defendant was not a party, the sale of the property to plaintiff by the sheriff could not divest defendant of the title he acquired from Ford Investment Corporation.
The appointment of a curator did not cure the defect in the executory process proceeding. Article 2674(1) Code of Civil Procedure, provides for an absentee to be represented by a curator, but the wording of this article clearly presupposes the defendant’s right to be made a party to the proceeding has been satisfied at the time the curator is appointed.[14] Moreover, the property registered in defendant’s name was sold in the executory process proceeding long after the curator had resigned. Even if defendant had been made a party, he was not represented by a curator pursuant to Article 2674(1) from the date of the curator’s resignation on September 9, 1963 until the property was sold on April 12, 1972. In the interim period between the resignation of the curator and the sale of the property owned by defendant, plaintiff filed a supplemental petition for executory process in which defendant could have been made a party. Plaintiff did not make defendant a party in that proceeding, an attorney was not appointed to represent him as an absentee, and the proceeding was not sufficient to divest title from defendant.
For the reasons assigned, the judgment appealed from is reversed, and judgment is hereby rendered in favor of Alvin V. Crais, defendant and plaintiff in reconvention, and against Lurry D. Lacour, plaintiff and defendant in reconvention, declaring the said Alvin V. Crais to be the owner of the following described immovable property:
“FIVE CERTAIN LOTS OF GROUND, together with all the buildings and improvements thereon, and all of the rights, ways, privileges, servitudes, advantages and appurtenances thereunto belonging or in anywise appertaining, situated in the City of Kenner, Parish of Jefferson, State of Louisiana, in that part thereof known as HIGHWAY PARK SUBDIVISION, in Square No. Forty (40) thereof, bounded by Florida Avenue, Twenty-Fourth Street, Williams Boulevard and Lake Avenue; which said lots are designated as Nos. 44, 45, 46, 47 and 48, on a survey by Adloe Orr, Jr. & Associates, Consulting Engineers, dated March 6,1954, a copy of which is annexed to an act before Edward J. Stoulig, Notary Public, dated April 23, 1954.”
*1210 Plaintiff and defendant in reconvention is to pay all costs of this proceeding.

REVERSED.

. Plaintiff answered defendant’s appeal complaining that the trial court should have maintained exceptions of res judicata and judicial estoppel and reserved the right to raise or assert errors in the trial court’s reasoning, including the trial court’s finding that an alleged judicial confession by defendant of plaintiffs possession was revoked by stipulation.

. Lacour v. Ford Investment Corporation, La.App., 183 So.2d 463.

. LSA-C.C.P. Art. 3657.

. 208 La. 772, 23 So.2d 409, at 445.

. 150 La. 729, 91 So. 169.

. 195 La. 328, 196 So. 548.

. In construing the identical partial release of mortgage, this court previously left this question open for decision. See Lacour v. Ford Investment Corporation, supra, note 2.

. Westwego Canal & Terminal Co. v. Pizanie, 174 La. 1068, 142 So. 691; Coyle v. Allen, 168 La. 504, 122 So. 596; Parent v. First Nat. Bank, 135 La. 254, 65 So. 233; Brewster Development Company, Inc. v. Fielder, La.App., 271 So.2d 299.

. Lacour v. Ford Investment Corporation, supra, note 2.

. Parent v. First Nat. Bank, supra, note 8 (unrecorded counter letter); Boudreaux v. Shadyside Company, La.App., Ill So.2d 891; Jackson v. Golson, La.App., 91 So.2d 394.

. Federal Land Bank v. Cook, 179 La. 857, 155 So. 249; Thompson v. Levy, 50 La.Ann. 751, 23 So. 913; Boissac v. Downs, 16 La.Ann. 187; Twichel v. Andry, 6 Rob. 407; Duncan v. Elam, 1 Rob. 135.

. LSA-C.C.P. Art. 2701. He must, however, receive notice of seizure. LSA-C.C.P. Art. 3742.

. We do not decide if such proceeding was appropriate under these facts or whether a real action should have been instituted against defendant in lieu of the executory process proceeding against his property.

.“The court shall appoint an attorney at law . to represent the unrepresented defendant in an executory proceeding under the following circumstances:
(1) When the defendant is an absentee;” (Emphasis ours).